DUNN v BENNETT

Docket No. 311357. Submitted November 13, 2013, at Detroit. Decided
    November 26, 2013. Approved for publication January 28, 2014, at
    9:10 a.m.

Stephen J. Dunn brought an action against Timothy M. Bennett in
    the Oakland Circuit Court, seeking to recover attorney fees that
    defendant owed plaintiff for attempting to remove a tax lien placed
    on defendant's property by the Internal Revenue Service (IRS).
    Defendant had signed a representation agreement in which he
    agreed to pay plaintiff an initial retainer of $3,000, an hourly fee of
    $275, and costs to represent him in the federal tax suit. After more
    than two years of litigation, the suit was settled by selling
    defendant's property, with the IRS collecting approximately
    $25,000 of the proceeds and defendant receiving just over $40,000.
    During the course of the litigation, defendant had paid plaintiff
    around $20,000, but he refused to pay the remaining balance of
    more than $116,000. Plaintiff moved for summary disposition.
    Defendant also moved for summary disposition, asserting in an
    affidavit that he proceeded with the litigation and made periodic
    payments to plaintiff on the basis of plaintiff's alleged statements
    that plaintiff could get the IRS to refund defendant's legal fees and
    costs, that he would continue with the case on a contingency-fee
    basis, and that he would waive his fees if he could get the IRS to
    remove the lien. The court, Martha D. Anderson, J., granted
    summary disposition for plaintiff with regard to his claims for
    breach of contract and account stated, and granted summary
    disposition for defendant with regard to plaintiff's conversion
    claim. Defendant appealed, and plaintiff cross-appealed.

    The Court of Appeals held:

    1. The trial court properly granted summary disposition to plain-
    tiff on his claim for account stated because there was no genuine issue
    of material fact regarding the existence of mutual assent to the debt
    at issue. It was undisputed that defendant signed an agreement to
    engage plaintiff's services for a fee, that defendant never objected to
    the bills he received, and that defendant sent plaintiff payments.
    Defendant's affidavit, even viewed in the light most favorable to him,

did not describe circumstances that would have excused his failure to object to plaintiff's repeated billings.

2. The trial court properly granted summary disposition to plaintiff with regard to the breach-of-contract claim. Defendant conceded that he signed a written agreement to engage plaintiff's services for a fee, and his contention that plaintiff was not a party to the arrangement was unsupported. Defendant waived the argument that the parties orally modified the arrangement by failing to raise it as an affirmative defense and, even if the argument had not been waived, it would have been without merit in light of the contractual clause requiring modifications to be in writing and the lack of admissible evidence that the alleged modifications were mutual.

3. The trial court properly granted summary disposition to defendant with regard to the conversion claim because there was no recovery to which an attorney's charging lien could have attached.

Affirmed.

*Dunn Counsel PLC* (by *Stephen J. Dunn*) for Stephen J. Dunn.

*Hemming, Polaczyk, Cronin, Witthoff & Bennett, PC* (by *Kevin L. Bennett*), for Timothy M. Bennett.

Before: FORT HOOD, P.J., and SAAD and BORRELLO, JJ.

PER CURIAM. In this action seeking payment of attorney fees, defendant, Timothy Bennett, appeals as of right the trial court's order granting summary disposition to plaintiff, attorney Stephen Dunn, on his claims for breach of contract and account stated. Plaintiff has filed a cross-appeal, challenging the trial court's entry of summary disposition in defendant's favor on plaintiff's conversion claim.[1] For the reasons set forth in this opinion, we affirm.

---

[1] Contrary to plaintiff's arguments, defendant's various briefs on appeal were timely filed as required by MCR 7.212(A)(1)(a)(iii) and MCR 7.212(A)(2)(a)(ii).

This appeal arises from defendant's engaging the services of plaintiff to represent him in actions that were brought against defendant by the Internal Revenue Service (IRS). Defendant had purchased a home from his father and had allegedly leased the property to his mother. The IRS asserted that defendant's mother had transferred her interest in the property without receiving consideration in order to avoid a federal tax lien. Thus, the IRS sent a "Notice of Tax Lien," listing defendant as a "nominee or transferee" of his mother. Defendant believed the lien to be improper and, with the aid of his brother, attorney Kevin Bennett, sought legal advice from plaintiff, a tax attorney with 26 years of practice experience. On March 27, 2009, plaintiff signed and returned a letter entitled "Re: Engagement Agreement Concerning Legal Representation." The engagement agreement confirmed that defendant had retained plaintiff's firm, Demorest Law Firm, PLLC (Demorest), to represent him concerning the lien placed by the IRS. The agreement specified the applicable rate, stating that Demorest charged an hourly rate of $275 for plaintiff's services, plus costs. The engagement agreement called for an initial retainer of $3,000, which was to be replenished as requested to pay fees and costs. Further, the agreement specified: "This Engagement Agreement sets forth the entire agreement between us. This Engagement Agreement may be modified only by a writing executed by you and the Demorest Law Firm, PLLC."

Plaintiff represented defendant for more than two years in a federal suit to remove a federal tax lien, ultimately reaching a settlement under which the property was sold. In keeping with the settlement agreement, the Internal Revenue Service collected $25,110.77 from the proceeds of the sale and defendant received $40,110.77. During the course of the litigation,

defendant paid approximately $20,000 for plaintiff's legal services, but refused payment of the remaining balance, $116,361.21. Plaintiff filed suit against defendant, alleging claims of (1) conversion, (2) account stated, and (3) breach of contract. The trial court granted summary disposition to plaintiff as to breach of contract and account stated, but granted defendant's motion for summary disposition as to conversion. This appeal then ensued.

"Appellate review of a motion for summary disposition is de novo." *Spiek v Dep't of Transp*, 456 Mich 331, 337; 572 NW2d 201 (1998). A motion for summary disposition under MCR 2.116(C)(10) questions the factual support for the plaintiff's claim and should be granted, as a matter of law, if no genuine issue of any material fact exists to warrant a trial.[2] *Id.* In considering a motion under MCR 2.116(C)(10), the Court considers the pleadings, affidavits, depositions, admissions and other evidence submitted by the parties in a light most favorable to the nonmoving party. *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999); MCR 2.116(G)(5).

Turning first to plaintiff's account-stated claim, we conclude that no material question of fact exists and that the trial court did not err by granting summary disposition. An "account stated" refers to a "contract based on assent to an agreed balance," which, like all contracts, must be created through mutual assent. *Fisher Sand & Gravel Co v Neal A Sweebe, Inc*, 494 Mich 543, 557; 837 NW2d 244 (2013) (citation and

___

[2] The trial court also considered plaintiff's conversion claim under MCR 2.116(C)(8); however, because the court reviewed the entire record, not simply the pleadings, we limit our review to its disposition under MCR 2.116(C)(10). See *Steward v Panek*, 251 Mich App 546, 554-555; 652 NW2d 232 (2002).

quotation marks omitted). "[P]arties *assent* to a sum as the correct balance due from one to the other; and whether this operation has been performed or not, in any instance, must depend upon the facts." *White v Campbell*, 25 Mich 463, 468 (1872). An express contract arises when the parties expressly agree to the sum due. *Fisher Sand & Gravel Co*, 494 Mich at 558. A party's acceptance may also be inferred when the party makes payments on the amount due or receives an accounting and fails to object within a reasonable time. *Corey v Jaroch*, 229 Mich 313, 315; 200 NW 957 (1924); *Pabst Brewing Co v Lueders*, 107 Mich 41, 48; 64 NW 872 (1895); *White*, 25 Mich at 469; *Keywell & Rosenfeld v Bithell*, 254 Mich App 300, 331; 657 NW2d 759 (2002).

In this case, plaintiff submitted documentary evidence establishing that he represented defendant for more than two years, during which time he sent defendant 33 statements detailing current monthly charges and a cumulative balance. The last statement, dated September 24, 2011, showed an amount due of $116,361.21. Plaintiff avers in an affidavit that defendant "never once objected to my statements" and in fact made payments on his account during the course of plaintiff's representation. He accompanies his affidavit of account with copies of the billing statements he sent to defendant, showing new charges, cumulative balances, and payments received from defendant. Nevertheless, defendant maintains that a genuine issue of material fact exists regarding the question of mutual assent to the debt. To support his claim, he makes the following averments in his affidavit:

13. ... I sought legal advice and possible representation. I, and my brother Kevin Bennett, consulted with [plaintiff] at [Demorest]. [Plaintiff] told me that I had a very good case ... and that he could get the IRS to pay my

legal fees and costs. I signed the "engagement letter," and [plaintiff] initiated litigation.

14. The litigation ensued, and the amounts stated on the legal billings were becoming excessive, and seemed to approach and/or exceed the one-half value of the . . . property. Because of [plaintiff's] representation that he would recover my legal fees and costs from the IRS, I believed that it was worthwhile to proceed with the litigation, and in good faith, I paid [Demorest] approximately . . . $20,000, mostly on credit cards.

15. I did not and would not have agreed to pay any attorney a legal fee that exceeded or even approached the one-half value of the . . . property. Again, I fully relied upon [plaintiff's] representation that he would get his fees and costs from the IRS and I would be refunded the payments I had already made to [Demorest].

16. After the deposition of my father Gary Bennett, I told [plaintiff] that I could not pay him any more money, and [plaintiff] responded by telling me that the case had become a contingency fee case, meaning that he would not get paid any addition[al] fees unless he recovered them from the IRS, as he had represented he would. I relied upon [plaintiff's] representation, and continued with the case.

17. Before the trial date, [plaintiff] told me that he would "waive his fees" if he could get the IRS to remove the lien . . . . I understood that to mean that he would not ask me to pay him anything in addition to what I had already paid to [Demorest].

Even viewing his affidavit in a light most favorable to defendant, as a general matter, defendant agrees with the basic facts underlying plaintiff's claim. First, defendant's affidavit does not dispute that plaintiff completed the work or that he incurred the expenses for which he sought payment from defendant. Second, defendant does not aver that he did not receive monthly billings. Third, defendant does not state in his affidavit that he offered timely objections

to the billings; in other words, he never claims to have told plaintiff that he did not owe the amounts reported. Lastly, defendant also fully admits in his affidavit that he made payments on the amounts due, in an amount approximating $20,000. In short, defendant has not contradicted the essential facts underlying plaintiff's account-stated claim.

Rather than submit documentary evidence contradicting the material elements of plaintiff's claim, the main thrust of defendant's argument appears to be that no objection was necessary under the circumstances that he describes in his affidavit. Defendant is correct that when silence forms the basis for inferring assent to a sum owed, the circumstances involved must support an inference of assent. *Thomasma v Carpenter*, 175 Mich 428, 436-437; 141 NW 559 (1913). But, even viewing his affidavit in a light most favorable to defendant, he has failed to describe circumstances that would excuse his failure to object to plaintiff's repeated billings. On the contrary, he admits to signing an agreement to engage plaintiff's services for a fee, he never objected to the bills received, and he actually sent payments to plaintiff. Moreover, even if the "circumstances" as he describes them could explain defendant's *silence*, mutual assent to an account stated may also be established by payments on the account. *Corey*, 229 Mich at 315; *Keywell & Rosenfeld*, 254 Mich App at 331. Under the circumstances presented, the reasonable inference from defendant's inaction and partial payment was that he assented to the amount due and, thus, an account stated was established. *White*, 25 Mich at 469; *Pabst Brewing Co*, 107 Mich at 48. Accordingly, because no genuine issue of material fact existed as to plaintiff's account-stated claim, the trial court did

not err by granting summary disposition.[3]

Regarding plaintiff's breach-of-contract claim, we also conclude that the trial court did not err in granting summary disposition. A party claiming a breach of contract must establish "(1) that there was a contract, (2) that the other party breached the contract and, (3) that the party asserting breach of contract suffered damages as a result of the breach." *Miller-Davis Co v Ahrens Const, Inc (On Remand)*, 296 Mich App 56, 71; 817 NW2d 609 (2012). The existence and interpretation of a contract are issues of law reviewed de novo. *Kloian v Domino's Pizza LLC*, 273 Mich App 449, 452; 733 NW2d 766 (2006). In this case, defendant concedes that he signed a written "Engagement Agreement" to retain plaintiff's then law firm, Demorest Law Firm, PLLC, as legal counsel relating to the tax lien issue. Plaintiff also signed the agreement. The agreement laid out the fee arrangement, calling for an hourly rate and explaining the retainer. In keeping with this written fee arrangement, plaintiff claims an outstanding balance of $116,361.21, asserting that defendant's failure to pay constitutes a breach of contract.

In response, defendant asserts first that the fee arrangement described in the engagement agreement

---

[3] Aside from the "circumstances" surrounding his arrangement with plaintiff, defendant expressly denies the existence of an account stated, averring that he "did not and would not have agreed to pay any attorney a legal fee that exceeded or even approached the one-half value of the . . . property." However, "[s]ummary disposition cannot be avoided by conclusory assertions that are at odds either with prior sworn testimony of a party or, as here, *actual historical conduct of a party.*" *Aetna Cas & Surety Co v Ralph Wilson Plastics Co*, 202 Mich App 540, 548; 509 NW2d 520 (1993) (emphasis added). Thus, although defendant makes the conclusory assertion that he did not agree and would not have agreed to the amount billed, his assertion is belied by the signed engagement agreement, his past acquiescence to the bills, and his affirmative conduct in making payments.

does not apply because plaintiff was not a party to the arrangement. However, defendant's contention in this regard is insufficiently briefed and, thus, abandoned on appeal. *Blackburne & Brown Mortgage Co v Ziomek*, 264 Mich App 615, 619; 692 NW2d 388 (2004). He claims that he and the law firm were the only parties to the agreement, but he does not explain why plaintiff—a signatory to the agreement and his principal attorney— was a nonparty; nor does he offer any citation to support this position. He also insists that because plaintiff left the Demorest firm for another firm, he cannot use the written agreement to establish a breach of contract claim.[4] Again, however, defendant fails to cite any authority for this proposition. " 'An appellant may not merely announce its position or assert an error and leave it to this Court to discover and rationalize the basis for its claims, unravel or elaborate its argument, or search for authority for its position.' " *Id.*, quoting *Wiley v Henry Ford Cottage Hosp*, 257 Mich App 488, 499; 668 NW2d 402 (2003). Having failed to properly brief this argument, defendant has abandoned it, and we will not address it on appeal. *Id.*

In the alternative, defendant argues that even if the written agreement covers his relationship with plaintiff, the parties orally modified their arrangement. Defendant waived his claim of modification by failing to raise it as an affirmative defense and support it with facts in his responsive pleadings. MCR 2.111(F)(3); *Attorney General ex rel Dep't of Environmental Quality v Bulk Petroleum Corp*, 276 Mich App 654, 664; 741 NW2d 857 (2007). Nevertheless, were we to consider defendant's argument, we would find it to be without

---

[4] Also, in making these arguments, he ignores entirely the "Assignment Agreement," which assigned collection rights for defendant's account to plaintiff's new firm.

merit. Relevant to this argument, the written agreement contained a clause requiring any modifications to be in writing. The provision stated: "This Engagement Agreement sets forth the entire agreement between us. This Engagement Agreement may be modified only by a writing executed by you and [Demorest]." Notwithstanding a written modification clause, parties are free to *mutually* waive or modify their contract. *Quality Prods & Concepts Co v Nagel Precision, Inc*, 469 Mich 362, 364, 372; 666 NW2d 251 (2003). However, with or without a clause restricting amendment, a party may not unilaterally alter the original contract. *Id.* "The mutuality requirement is satisfied where a modification is established through clear and convincing evidence of a written agreement, oral agreement, or affirmative conduct establishing mutual agreement to waive the terms of the original contract." *Id.* at 373. The party advancing amendment has the burden of establishing mutual amendment. *Id.*

To show a mutual agreement to modify the express written terms, defendant does not present evidence of a written modification; he relies instead on the averments in his affidavit as detailed earlier, which can be characterized as containing three alleged amendments: (1) plaintiff's representation that legal fees and costs would be collected from the IRS; (2) plaintiff's statement that the case had become a "contingency fee case"; and (3) plaintiff's statement that he would "waive his fees." From Paragraph 13 of defendant's affidavit, it appears he asserts that plaintiff made the representations regarding payment by the IRS before or contemporaneously with the signing of the written agreement. Consequently, the parol evidence rule bars admission of this evidence to vary the unambiguous contract terms. *UAW-GM Human Resource Ctr v KSL Recreation Corp*, 228 Mich App 486, 492; 579 NW2d 411 (1998).

Defendant's averments that plaintiff stated the case was a "contingency case" or that he would "waive his fees" come closer to providing some evidence of oral modification. However, viewing defendant's affidavit in a light most favorable to him, his assertions do not show clear and convincing evidence of *mutual* modification, that is, *"express* oral or written agreement." *Quality Prods & Concepts Co,* 469 Mich at 373 (emphasis added). Defendant describes one-sided proclamations by plaintiff, never suggesting that he vocalized his agreement with these statements or that they actually reached a *mutual* verbal agreement. See *id.* at 372; *Kamalnath v Mercy Mem Hosp Corp,* 194 Mich App 543, 549; 487 NW2d 499 (1992) ("Mere discussions and negotiation, including unaccepted offers, cannot be a substitute for the formal requirements of a contract."). Further, although a course of affirmative conduct coupled with oral representations can amount to waiver, in this case it is undisputed that defendant continued to accept plaintiff's services, that plaintiff billed defendant for his services in keeping with the written agreement, and that defendant made payments on those services. This in no way suggests an affirmative agreement to waive the written contract terms. See *Quality Prods & Concepts Co,* 469 Mich at 373. In the absence of evidence of *mutual* modification, there was no genuine issue of material fact and the trial court did not err by granting summary disposition on the breach-of-contract claim.

Finally, we conclude that the trial court properly granted summary disposition to defendant on the conversion claim and denied the same to plaintiff. "[C]onversion is defined as any distinct act of domain wrongfully exerted over another's personal property in denial of or inconsistent with the rights therein." *Foremost Ins Co v Allstate Ins Co,* 439 Mich 378, 391;

486 NW2d 600 (1992). For instance, conversion may be committed by the refusal to surrender property on demand. *Citizens Ins Co of America v Delcamp Truck Ctr, Inc*, 178 Mich App 570, 575; 444 NW2d 210 (1989). Money is treated as personal property, and an action may lie in conversion of money provided that "there is an obligation to keep intact or deliver the specific money in question, and where such money can be identified." *Garras v Bekiares*, 315 Mich 141, 149; 23 NW2d 239 (1946) (citation and quotation marks omitted); see also *Citizens Ins Co of America*, 178 Mich App at 575.

In this case, plaintiff asserts that he had an attorney's charging lien on the funds defendant received from the proceeds of the sale and that defendant's refusal to surrender these funds constituted actionable conversion. As an initial matter, the issue thus appears to be whether plaintiff in fact had a charging lien on the funds in question. "Michigan recognizes a common law attorney's lien on a judgment or fund resulting from the attorney's services." *Miller v Detroit Auto Inter-Ins Exch*, 139 Mich App 565, 568; 362 NW2d 837 (1984). A "charging lien" is "an equitable right to have the fees and costs due for services secured out of the judgment or *recovery* in a particular suit." *George v Sandor M Gelman, PC*, 201 Mich App 474, 476; 506 NW2d 583 (1993) (emphasis added). We do not view this as a "recovery" to which a charging lien may be attached. See *id.*; 93 ALR 667, 687, § 3. Without a charging lien, plaintiff had no legal interest in the funds and cannot sustain a conversion claim. See generally *Garras*, 315 Mich at 148; *Citizens Ins Co of America*, 178 Mich App at 575. Consequently, the trial court did not err by granting defendant's motion for summary disposition and denying plaintiff's motion for summary disposition.

Affirmed. Neither party having prevailed in full, we do not assign costs. MCR 7.219.

FORT HOOD, P.J., and SAAD and BORRELLO, JJ., concurred.