# STATE OF MICHIGAN

# COURT OF APPEALS

KAREN KEREKES,

        Plaintiff-Counterdefendant-
        Appellant,

v

MILLER LAKESIDE MOTEL, INC., HPK
LAKESIDE PROPERTIES, LLC, and HELEN
KEREKES, Individually and as Trustee of the
HELEN M. KEREKES TRUST and Successor
Trustee of the LEWIS KEREKES TRUST,

        Defendants-Counterplaintiffs-
        Appellees.

UNPUBLISHED
April 28, 2016

No.  325325
Mason Circuit Court
LC No.  13-000048-CZ

Before:  SAWYER, P.J., and MURPHY and RONAYNE KRAUSE, JJ.

PER CURIAM.

In this case arising out of a familial dispute and involving claims of breach of promise and unjust enrichment, plaintiff appeals as of right the trial court's order granting summary disposition in favor of defendants.  We affirm.

Plaintiff moved to Ludington, Michigan, in July 2003, and began residing with her boyfriend, Jeffrey Kerekes, whom she eventually married in 2008.  Jeffrey Kerekes is the son of Lewis and defendant Helen Kerekes.  The Kerekes family had owned and operated the Lakeside Inn Motel in Ludington dating back to the 1970s, and in 1993 the ownership of the motel was placed in the name of defendant Miller Lakeside Motel, Inc. (MLMI), with Lewis Kerekes as the corporation's sole shareholder.  Jeffrey Kerekes alone served in the various director and officer positions for MLMI for about 20 years, and the Kerekes family was involved in the day-to-day operations of the motel.  Plaintiff testified in her deposition that after she arrived in Ludington in July 2003, she spent the remainder of the year working at the motel on a voluntary basis, assisting with various chores.  Plaintiff testified that in January 2004, she was hired by the Kerekes and began working at the motel at the pay rate of approximately $9 per hour, performing a large variety of duties associated with operating a motel, including housekeeping and maintenance.  According to plaintiff, she worked anywhere from 40 up to 70 hours per week during the tourist season and fewer hours over the winter months.  Plaintiff testified that she was paid the same $9 per hour in 2005 and 2006, and that, although she continued working at the motel as before, along with taking on additional new tasks, she was not paid anything from 2007 through 2009, while receiving minimal

-1-

amounts, approximately $3,500 annually, in 2010 and 2011. In stark contrast to plaintiff's testimony, Helen Kerekes testified in her deposition that plaintiff never worked at the motel, while testimony by Jeffrey Kerekes generally supported plaintiff's version of events. Plaintiff testified that there was no documentation showing the actual hours that she had worked.

Lewis Kerekes died in February 2011, and Jeffrey Kerekes, who had been managing the motel, testified that he continued "running the operation."[1] Defendants alleged below that upon Lewis Kerekes' death, Jeffrey Kerekes had asserted a claim that he was sole owner of the business. Helen Kerekes testified that she solely owned the business following her husband's death. In June 2012, Helen Kerekes formed defendant HPK Lakeside Properties, LLC (HPK), which plaintiff claimed was done to undermine her husband's operation of the business and to prevent plaintiff from receiving money rightfully owed to plaintiff.[2] In September 2012, plaintiff stopped working at the motel due to, as claimed by plaintiff, tensions and disagreements between her and Helen Kerekes. And plaintiff alleged that Jeffrey Kerekes' multiple roles in the business, including as president and sole director, ended in September 2012. In October 2012, Helen Kerekes, individually and in various fiduciary roles, reopened a probate estate and filed numerous pleadings, motions, and petitions in the probate court, including an action against plaintiff and Jeffrey Kerekes, claiming ownership of the motel. Helen Kerekes apparently obtained a temporary restraining order from the probate court, which, according to plaintiff, barred her from entering the motel grounds. The probate action remained pending at the time the instant case, which was filed in February 2013, was summarily dismissed.

In plaintiff's amended complaint,[3] she alleged four counts, including a "Lost Wage Claim," which provided in relevant part:

> 11. Commencing with the year 2004 and continuing until September of 2012, [p]laintiff was employed as an employee of [MLMI] and/or HPK, but did not receive a fair and just wage for the reason that the income of [MLMI] and/or HPK was not sufficient to pay her a wage, but [MLMI] and/or HPK, through its agents and owners, made various promises that [p]laintiff would be paid a decent, living wage when income from the operation of such motel business was sufficient enough to pay her a wage.

---

[1] Helen Kerekes testified that estate planning documents provided that Jeffrey Kerekes could continue managing the motel following his father's death. Helen Kerekes further testified that she was involved in running the front desk and overseeing the daily operations of the motel and that she effectively managed the motel because her son "was gone most of the time" and would "[c]ome and go whenever he wanted."

[2] In an affidavit, Helen Kerekes averred that she was the sole member of HPK and that it was "a legal entity established in June 2012 to succeed the operational aspect of [MLMI] . . ., pending resolution of Probate Case No. 12-185-CZ[,]" which case we shall discuss below.

[3] With respect to the instant circuit court action filed by plaintiff, the judge presiding over the probate proceedings was assigned to also preside over plaintiff's lawsuit given his familiarity with the parties and the surrounding circumstances.

12. That [p]laintiff may have received a minor amount of compensation during the period of times mentioned herein, but such compensation was totally inadequate and against both federal and state laws.[4]

13. That [p]laintiff was induced to perform various and sundry duties as an employee of [MLMI] and/or HPK in the belief that equity and future of income of [d]efendant[s] would provide her with adequate compensation for all services rendered over the years.

. . .

17. That [d]efendants [MLMI] and/or HPK *breached its promise, as well as the applicable Michigan and Federal Laws*, to pay [p]laintiff a wage for all of the time and effort given to [d]efendant[s] by [p]laintiff to the ongoing operation of [d]efendant[s'] business while the same was seasonally in operation.[5]

18. That [p]laintiff's computation of uncompensated time and reasonable rates of pay justifies a claim for back wages in excess of $140,000.00. [Emphasis added.]

In her deposition, plaintiff was asked to provide specifics regarding the allegations in paragraph 11 of the amended complaint that she was promised that she "would be paid a decent, living wage when income from the operation of [the] motel business was sufficient enough to pay her a wage." Plaintiff testified that the promise was initially made in 2005 and repeated a few times annually over the years that followed, primarily by Jeffrey and Lewis Kerekes, but also Helen Kerekes at times; nothing was put in writing. Plaintiff testified that after Lewis Kerekes died, Helen Kerekes had told her that "this is all going to be yours," which plaintiff construed as meaning that she and her husband would inherit the motel, providing them security in their retirement. Plaintiff's deposition testimony indicated, at various points, that there was an agreement that if plaintiff helped in operating the motel for little or no compensation, thereby allowing the Kerekes to maintain the business and make much needed repairs, she, as well as her husband, would be rewarded with ownership of the business. Jeffrey Kerekes similarly testified that there was an agreement that plaintiff would not be paid the wages to which she was actually entitled, because the two of them

---

[4] In her original complaint, in which she had only named MLMI as a defendant, plaintiff alleged this identical paragraph, and MLMI submitted interrogatories to plaintiff asking her to specifically identify the state and federal laws referred to in the paragraph. Plaintiff responded by citing various Michigan statutory provisions, the Michigan Constitution, and a federal statute, all of which plaintiff later declined to pursue. Plaintiff thereafter filed her amended complaint.

[5] In her original complaint, plaintiff alleged a nearly identical paragraph, including the breach of promise language and the reference to state and federal laws. MLMI had also requested in its interrogatories, alluded to in the previous footnote, that plaintiff specifically identify the state and federal laws referred to in this particular paragraph. Plaintiff responded by directing the reader to the statutory and constitutional provisions cited in her answers to the interrogatories concerning the earlier paragraph in the complaint. Plaintiff made no mention of Michigan common law.

-3-

would ultimately receive the business. We note that this is not the same as an agreement that plaintiff would receive compensation for backpay in the future once the motel generated income sufficient to pay her wages, which was the allegation in the amended complaint. However, and more in tune with the actual allegation in the amended complaint, plaintiff also testified about her understanding that when the motel became profitable, which required it "to make at least another hundred thousand [dollars]," she "would begin to be able to get paid again." But when asked whether the motel ever became profitable before September 2012 – when she stopped working at the motel, plaintiff responded, "No, not enough."

The amended complaint also contained a count alleging the fraudulent transfer of assets relative to Helen Kerekes establishing and purportedly funneling assets to HPK, along with a count requesting the trial court to pierce HPK's corporate veil; however, neither of these counts is ultimately relevant to resolving this appeal. The fourth count in plaintiff's amended complaint alleged unjust enrichment. Part of the unjust enrichment claim focused on the allegation that Helen Kerekes had shifted assets to HPK, with the improper intent to shield the assets from being recovered by plaintiff should plaintiff prevail in her suit, thereby unjustly enriching Helen Kerekes. However, the unjust enrichment claim also had a second component, as revealed in the following allegations:

> 34. That the work and efforts of [p]laintiff . . . [in] performing repairs and replacements and improvements to the real estate upon which the motel is situated . . . enhanced the value [of] the real estate through the replacement of windows, doors, flooring, plumbing, fixtures and tile, all of which are permanent improvements to the real estate.

> 35. That without adequate compensation, the labor, talents and efforts of [p]laintiff will benefit the Trusts which assumedly are now the owners of the real estate and to allow the value to be retained by the Trusts without compensation to [p]laintiff . . . [would] constitut[e] unjust enrichment.

Defendants filed a motion for summary disposition, arguing a litany of reasons for the trial court to dismiss plaintiff's entire lawsuit.[6] As relevant to this appeal, defendants argued that the lost-wages claim failed to state a cause of action, MCR 2.116(C)(8), "under the applicable statutes." Defendants alternatively argued that no genuine issue of material fact existed, MCR 2.116(C)(10), as necessary to proceed with the lost-wages claim under the "state and federal statutes." With respect to the unjust enrichment claim, as well as the fraudulent-transfer and veil-piercing claims, defendants contended that none of MLMI's assets were ever transferred to HPK, so all of those counts failed pursuant to MCR 2.116(C)(10). There was no specific argument that a common-law breach of promise claim failed, for purposes of either MCR 2.116(C)(8) or (10), ostensibly because

---

[6] We note that defendants filed a counterclaim for conversion against plaintiff. As far as we can tell from the record, this counterclaim was never resolved. To the extent that this appeal should therefore have been pursued as an application for leave to appeal, we shall, in the exercise of our discretion, grant leave and address the merits of plaintiff's appeal. *Rains v Rains*, 301 Mich App 313, 320 n 2; 836 NW2d 709 (2013). Defendants remain free to pursue their counterclaim if it indeed remained pending.

defendants were unaware of such a claim given plaintiff's interrogatory answers indicating reliance on statutory and constitutional theories for her lost-wages claim. In plaintiff's response brief, she stated that her claims were "not based on the statutes alleged [by defendants] to be inapplicable;" rather, plaintiff's lost-wages claim was premised "on breach of contract." Later in her response brief, plaintiff conceded that she had not stated a valid constitutional or statutory claim, reiterating that she was relying on a breach of contract theory. Plaintiff further argued that "[t]he answers to interrogatories cannot be construed as a statement by the [p]laintiff regarding the legal foundation of her claim, nor can her responses to the interrogatories be construed as the [p]laintiff's legal support for her claim." Plaintiff proceeded to maintain that there were facts supporting her fraudulent-conveyance, unjust-enrichment, and veil-piercing claims. However, in relation to the claim of unjust enrichment, plaintiff presented an argument focused solely on that component of the claim that concerned the alleged transfer of assets to HPK, not the aspect of unjust enrichment relative to plaintiff doing work that improved the business for which she should be compensated in order to prevent defendants from being unjustly enriched.

Defendants then filed a reply brief, arguing that plaintiff failed to provide any admissible evidence in support of her fraudulent-conveyance, unjust-enrichment, and veil-piercing claims. With respect to the lost-wages claim, defendants simply contended that the claim failed because plaintiff had now conceded that the statutory and constitutional theories underlying the claim were inapplicable. At the hearing on defendants' motion for summary disposition, the trial court addressed what it viewed as plaintiff's attempt to alter her legal theory in support of the lost-wages claim to one based on common-law breach of promise or contract, which was not identified in the interrogatory answers. As reflected in the order that arose out of the hearing, the trial court directed the parties to submit supplemental briefs regarding "[w]hether there is any authority that would allow a party to change the legal theory contained in the claim after discovery," and "[w]hether there is any authority that would prevent a claim from being invoked based on a different authority if there is a statutory framework that disposes of such a claim." The parties thereafter filed supplemental briefs to address the questions posed by the trial court, and we shall discuss the arguments presented in those briefs in the analysis section of this opinion to the extent that they are relevant in resolving this appeal. However, there is one salient point that we make now, which is that defendants in their supplemental brief not only confronted the questions raised by the trial court, they added an additional argument in support of summary disposition, given plaintiff's recent disclosure of a common-law theory in regard to her lost-wages claim. Defendants maintained that they were entitled to summary disposition pursuant to MCR 2.116(C)(10), where plaintiff had failed to provide any evidence in support of a breach of contract or promise claim. Plaintiff's supplemental brief, which was filed a day earlier than defendants' supplemental brief, did not address MCR 2.116(C)(10), but instead dealt only with the questions posed by the trial court.

Defendants next filed a response to plaintiff's supplemental brief, reiterating their position that they were entitled to summary disposition under MCR 2.116(C)(10) relative to a breach of contract or promise claim. Plaintiff then filed a rebuttal brief, but while it addressed defendants' arguments on the questions of concern to the trial court, the brief did not include any discussion or argument whatsoever on defendants' new assertion that a common-law breach of contract or

promise claim should be dismissed under MCR 2.116(C)(10). Accordingly, plaintiff did not attach any documentary evidence regarding that issue, and she had not done so previously.[7]

The trial court eventually granted summary disposition in favor of defendants. In a written opinion and order, the trial court first tackled plaintiff's breach of promise or contract claim. The trial court found that, in answering defendants' interrogatories, plaintiff had made "no reference or citation to a common law claim for breach of promise or breach of contract" and that plaintiff had never supplemented her answers to "disclose the common law theories of breach of promise or breach of contract." The trial court then noted that plaintiff had effectively stipulated that the statutory and constitutional theories underlying the lost-wages claim, as referred to in the interrogatory answers, were inapplicable, resulting in abandonment of those theories. The trial court further concluded that, on substantive examination, those statutory and constitutional theories lacked merit, and the court granted summary disposition to defendants to the extent that the lost-wages claim was predicated on those theories. With respect to the breach of promise or contract claim, the trial court summarily dismissed it for two reasons: (1) plaintiff did not disclose the common-law claim during discovery when responding to the interrogatories; and (2) plaintiff failed to cite or present documentary evidence as necessary to create an issue of fact in regard to any common-law claim. With regard to the latter ruling, the trial court concluded that plaintiff had submitted no evidence to substantiate the claim. The trial court summarily dismissed the remaining counts on the basis of mootness, including the unjust enrichment claim, observing "that these claims were added . . . to ensure that there would be sufficient assets from which to collect a[] judgment obtained relative to the wage claim" that had now been dismissed.

Plaintiff filed a motion for reconsideration, arguing in part that Michigan is a notice-pleading state, that she had sufficiently put defendants on notice of a breach of promise claim under the plain language in the amended complaint, and that plaintiff had also clearly alleged an unjust enrichment claim *based on defendants unjustly obtaining the benefit of plaintiff's work efforts absent a cost to defendants*, which was unconnected to the transfer of assets. On the subject of the trial court's summary dismissal of the breach of promise or contract claim under MCR 2.116(C)(10), the full extent of plaintiff's argument was as follows:

> Plaintiff and her husband have attested through deposition to facts which, if true, would prove that [p]laintiff for years worked for [d]efendant[s] based upon [d]efendant[s'] promise of payment, which never came. Plaintiff's testimony should be taken as true for the purposes of [d]efendant[s'] [m]otion. As such, [p]laintiff's case should properly be heard before a jury of her peers and this [c]ourt should reconsider and deny [d]efendant[s'] [m]otion for [s]ummary [d]isposition.

> . . .

> The result of discovery was several depositions [were] taken. Those depositions establish a genuine issue of material fact in dispute as to whether [d]efendants made a promise to pay [p]laintiff for work performed.

---

[7] We note that all of the deposition testimony referred to above was contained in transcripts attached to defendants' motion for summary disposition.

Plaintiff did not attach deposition transcripts, or any other relevant documentary evidence, nor did she bother to provide a citation to deposition pages that had earlier been attached to defendants' motion for summary disposition. The trial court issued a written opinion and order denying plaintiff's motion for reconsideration. The trial court noted that the fact that Michigan is a notice-pleading jurisdiction was not the problematic issue; rather, it was plaintiff's discovery failure in not identifying a common-law claim for breach of promise or contract when responding to defendants' interrogatories that justified rejecting such a claim. The trial court next concluded that an even bigger problem was that plaintiff failed to present documentary evidence as necessary to create a genuine issue of material fact, MCR 2.116(C)(10), relative to a breach of promise or contract claim. The trial court ruled that plaintiff's cursory and vague assertions in the motion for reconsideration about an issue of fact existing were inadequate. The court observed that plaintiff had failed to reference "specific deposition testimony" and had failed to supply the court with documentary evidence on the issue. With respect to unjust enrichment, the trial court now recognized that paragraphs 34 and 35 of the amended complaint, quoted above, had indeed set forth a claim of unjust enrichment for purposes of MCR 2.116(C)(8) that was not based on the transfer of assets. The trial court, however, concluded that the unjust enrichment claim nonetheless failed under MCR 2.116(C)(10), where plaintiff "completely failed to come forward with any admissible evidence to establish that an issue of fact exists" with respect to the claim. Plaintiff now appeals the trial court's rulings.

A trial court's decision on a motion for summary disposition is reviewed de novo on appeal. *Elba Twp v Gratiot Co Drain Comm'r*, 493 Mich 265, 277; 831 NW2d 204 (2013). "We review a trial court's ruling on a motion for reconsideration for an abuse of discretion." *Corporan v Henton*, 282 Mich App 599, 605; 766 NW2d 903 (2009).[8]

---

[8] In *Pioneer State Mut Ins Co v Dells*, 301 Mich App 368, 377; 836 NW2d 257 (2013), this Court recited the well-established principles governing the analysis of a motion for summary disposition brought under MCR 2.116(C)(10), observing:

> In general, MCR 2.116(C)(10) provides for summary disposition when there is no genuine issue regarding any material fact and the moving party is entitled to judgment or partial judgment as a matter of law. A motion brought under MCR 2.116(C)(10) tests the factual support for a party's claim. A trial court may grant a motion for summary disposition under MCR 2.116(C)(10) if the pleadings, affidavits, and other documentary evidence, when viewed in a light most favorable to the nonmovant, show that there is no genuine issue with respect to any material fact. A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ. The trial court is not permitted to assess credibility, weigh the evidence, or resolve factual disputes, and if material evidence conflicts, it is not appropriate to grant a motion for summary disposition under MCR 2.116(C)(10). A court may only consider substantively admissible evidence actually proffered relative to a motion for summary disposition under MCR 2.116(C)(10). [Citations and quotation marks omitted.]

Plaintiff devotes a great deal of her appellate brief to arguing that Michigan is a notice-pleading state and that defendants clearly had notice of a breach of promise claim, considering the plain language of the amended complaint alleging that MLMI or HPK had "breached its promise." Plaintiff contends that defendants' interrogatories did not ask about the nature or legal basis of the breach of promise claim, but referred only to the *additional* language in the complaint's pertinent paragraph alleging state and federal law violations. With respect to the breach of promise claim, we decline to rule on whether the trial court erred in summarily dismissing the claim on the basis of the interrogatory answers. Plaintiff correctly contends that Michigan is a notice-pleading state. See MCR 2.111(B)(1) ("A complaint . . . must contain . . . [a] statement of the facts, without repetition, on which the pleader relies in stating the cause of action, with the specific allegations necessary reasonably to inform the adverse party of the nature of the claims the adverse party is called on to defend[.]"). As recognized by the trial court, plaintiff's notice-pleading argument somewhat misses the point, with the more relevant inquiry being whether plaintiff's response to the interrogatories precluded reliance on a common-law breach of promise or contract theory. The pertinent interrogatories were akin to a motion for more definite statement, MCR 2.115(A). The relevant paragraph in the amended complaint alleged that at least one of the corporate defendants "breached its promise, *as well as* the applicable Michigan and Federal Laws, to pay [p]laintiff . . . ." (Emphasis added.) Defendants' interrogatories asked plaintiff to provide a citation of the Michigan and federal laws referred to in the paragraph. It is not entirely unreasonable to construe the interrogatories as only speaking to the state and federal law references in the paragraph and not the preceding "breach of promise" language contained in the paragraph. That said, we need not decide the issue, given that the trial court properly granted summary disposition in favor of defendants under MCR 2.116(C)(10).

First, plaintiff has completely failed to even legally define the parameters and provide the elements of the alleged breach of promise claim.[9] Plaintiff does not state in her appellate brief whether she was advancing a standard breach of contract claim, *Dunn v Bennett*, 303 Mich App 767, 774; 846 NW2d 75 (2014), a promissory estoppel theory, *Novak v Nationwide Mut Ins Co*, 235 Mich App 675, 686-687; 599 NW2d 546 (1999), or the existence of a contract subject to a condition precedent, *Harbor Park Market, Inc v Gronda*, 277 Mich App 126, 131; 743 NW2d 585 (2007). The gist of the allegation in plaintiff's amended complaint was that, in exchange for uncompensated or undercompensated services rendered while the motel struggled financially, plaintiff was promised future payment or compensation "when income from the operation of such motel business was sufficient enough to pay her a wage." We first note that plaintiff's deposition testimony, provided by defendants, referred to, in part, a promise that plaintiff and her husband would inherit

---

[9]     In *Mudge v Macomb Co*, 458 Mich 87, 105; 580 NW2d 845 (1998), our Supreme Court stated:

> "It is not enough for an appellant in his brief simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position. The appellant himself must first adequately prime the pump; only then does the appellate well begin to flow." [Citation omitted.]

the business, but this did not serve as the basis of plaintiff's amended complaint and, regardless, it would be premature to attempt enforcement. The closest that plaintiff's testimony came to the actual allegation in the amended complaint was that she was promised payment when the business became profitable. The relevant promise was "conditional," and whether viewed in terms of promissory estoppel or a conditional contract, the promise had not become binding, where plaintiff herself testified that the business had not yet become profitable when she departed, and where plaintiff does not point to any evidence of the contingency, as alleged or testified to, ever occurring. See *Harbor Park Market*, 277 Mich App at 131 (condition precedent must take place before there is a contractual right to performance). Indeed, plaintiff does not even argue that the contingency had occurred.

The fact that the record did not support plaintiff's breach of promise claim might explain her vague, cursory, and woefully inadequate (C)(10) argument presented below and again on appeal. Defendants had argued for dismissal of the lost-wages claim, under which the breach of promise theory was alleged, pursuant to MCR 2.116(C)(10), and although the argument did not initially specifically encompass breach of promise, defendants later raised the issue. And it is evident that the trial court, even in the context of the motion for reconsideration, was prepared to substantively entertain a proper (C)(10) response by plaintiff. However, plaintiff simply did not comply with MCR 2.116(G)(4), which requires the submission of documentary evidence in responding to a (C)(10) motion and the need to "set forth specific facts showing that there is a genuine issue for trial." While plaintiff now expands her (C)(10) argument and cites deposition testimony in her appellate brief,[10] plaintiff only does so in regard to showing that she provided services and was the recipient of a promise; again, she does not refer us to any evidence showing that the contingency, which she alleged, ever occurred. The trial court did not err in granting defendants summary disposition with respect to the lost-wages claim predicated on a breach of promise.

We next address plaintiff's appellate arguments challenging the summary dismissal of her unjust enrichment claim. The elements of unjust enrichment are (1) the receipt of a benefit by a defendant from the plaintiff and (2) an inequity resulting to the plaintiff because of the defendant's retention of the benefit. *Barber v SMH (US), Inc*, 202 Mich App 366, 375; 509 NW2d 791 (1993). When the elements of unjust enrichment have been shown, "the law operates to imply a contract in order to prevent unjust enrichment," but such a contract will only be implied "if there is no express contract covering the same subject matter." *Id.*

Plaintiff argues that she alleged facts in paragraphs 34 and 35 of her complaint sufficient to state a valid claim for unjust enrichment. Plaintiff apparently fails to appreciate that the trial court agreed with this argument in its written opinion and order addressing plaintiff's motion for reconsideration, concluding that dismissal of the unjust enrichment claim was improper under MCR 2.116(C)(8)(failure to state a claim upon which relief can be granted). Rather, the trial court summarily dismissed the unjust enrichment claim under MCR 2.116(C)(10). Plaintiff does not question whether the trial court was adequately presented with a (C)(10) motion relative to the

---

[10] We do note that plaintiff's citation to pages "80 – 134" of plaintiff's deposition does not comply with the rule that stated facts "must be supported by *specific* page references to the transcript[.]" MCR 7.212(C)(7) (emphasis added).

unjust enrichment claim, as predicated on the alleged performance of services that unjustly enriched defendants (not the asset-transfer theory).[11] And plaintiff does not frame an argument that the trial court erred in granting summary disposition in favor of defendants under MCR 2.116(C)(10) with respect to the unjust enrichment claim. "When an appellant fails to dispute the basis of a lower court's ruling, we need not even consider granting the relief being sought by the appellant." *Denhof v Challa*, 311 Mich App 499; __ NW2d __ (2015).

Plaintiff does make a cursory, conclusory statement that, "in light of the pleadings, documentary evidence and depositions filed and submitted by the parties . . ., the trier of fact could certainly find a verdict in favor of [plaintiff] on her count[] of . . . unjust enrichment." Plaintiff's appellate brief is grievously inadequate in challenging the trial court's ruling under MCR 2.116(C)(10) with regard to the unjust enrichment claim, and we deem the matter waived. See *Mudge v Macomb Co*, 458 Mich 87, 105; 580 NW2d 845 (1998). Further, there was evidence of an express conditional contract, thereby undermining any unjust enrichment claim. And we fail to see how retention of the benefit by defendants would be inequitable, given the conditional nature of the promise. The trial court did not err in summarily dismissing plaintiff's unjust enrichment claim.

Affirmed. Having fully prevailed on appeal, defendants are awarded taxable costs under MCR 7.219.

/s/ David H. Sawyer
/s/ William B. Murphy
/s/ Amy Ronayne Krause

---

[11] We do note that in response to defendants' motion for summary disposition under MCR 2.116(C)(10) in regard to unjust enrichment and the underlying transfer-of-assets theory, plaintiff never argued that the unjust enrichment claim was also based on a performance-of-services theory and that there was documentary evidence supporting that theory. Plaintiff's argument that the performance-of-services theory of unjust enrichment supported rejection of defendants' motion for summary disposition was not raised until the motion for reconsideration. Under these circumstances, we cannot find error, even were it alleged, in the trial court demanding reference and citation to documentary evidence in support of the unjust enrichment claim for purposes of MCR 2.116(C)(10).