*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

STROBL & SHARP, PC,

        Plaintiff-Appellee,

v

MICHAEL P. RIVAIT,

        Defendant-Appellant.

UNPUBLISHED
August 22, 2019

No. 343659
Oakland Circuit Court
LC No. 2017-158058-CK

Before: SHAPIRO, P.J., and GLEICHER and SWARTZLE, JJ.

PER CURIAM.

Plaintiff is a law firm seeking to recover payment for legal services rendered to defendant. Defendant appeals the trial court's order granting summary disposition to plaintiff under MCR 2.116(C)(10) (no genuine issue of material fact) for its claims of breach of contract and account stated. For the reasons stated below, we reverse and remand.

## I. BACKGROUND

Defendant is a principal of MPR 2000 Corporation, which is in the business of purchasing homes and then remodeling and selling them, i.e., "fix and flip." In the underlying action, Metro Mortgage Investment, LLC, sought to remove constructions liens placed on three properties by MPR 2000 Corporation. Plaintiff's representation of defendant and MPR 2000 Corporation began in November 2014 after defendant met with William Tripp, one of plaintiff's attorneys. Tripp stated in an affidavit that he told defendant that plaintiff would bill him for services on an hourly basis. Defendant, on the other hand, stated in an affidavit that when he asked how he would be able to pay plaintiff given his precarious financial situation, Tripp responded, "Don't worry about the legal fees. Let's just worry about you getting your money!" Defendant said that he asked Tripp if that meant "you're taking the case on a contingency," to which Tripp purportedly responded, "Yes, something like that. But let's not worry about that right now, like I said, let's worry about you getting your money." There is no evidence that a written fee agreement between the parties was executed at that time.

Defendant said that Tripp told him that he had a "good chance" in prevailing in the underlying action and was likely to recover a judgment over $200,000. Tripp did not address in

his affidavit what he told defendant about the case in their initial meetings. However, he stated that he learned during the course of the underlying action that defendant's claim "that he had not been paid for construction of the three houses was in fact a complete fabrication." Tripp also stated that the underlying action was "very contentious and time consuming . . . ."

Defendant said that sometime in the summer of 2015, Tripp asked him if he could pay some of the litigation costs, and defendant replied that neither he nor the company had any money. Defendant said that he consistently told Tripp that the only way plaintiff would receive payment is through a contingency fee.

At some point, defendant signed an hourly fee agreement with plaintiff. The agreement is prospective only; it makes no mention of prior services performed on defendant's behalf. The copy of the agreement produced by plaintiff is dated April 30, 2015. Plaintiff has not explained why this agreement would have been signed in April 2015 instead of November 2014 when the representation began.

Defendant, however, provided a different explanation for how the fee agreement came about. According to defendant, after an unsuccessful mediation attempt, Tripp and the other principal attorney working the case informed him that they could no longer represent him unless he started paying plaintiff. Defendant replied that he could not pay plaintiff, and soon after the attorneys negotiated a dismissal of the case. In April 2016, defendant went to Tripp's office to sign documents, and one of the documents was the fee agreement. When defendant asked for an explanation, Tripp said, "You know, I just need you to sign this because the board's really on my ass!" Defendant said he again informed Tripp that he had "no money," to which Tripp responded, "I know. I know. It's just for the board." Tripp said that he signed the fee agreement because he trusted Tripp and that he had "no idea" of the ramifications of signing the agreement. Defendant maintains that he signed the agreement in April 2016 and that it was backdated to April 2015 without his consent.

Plaintiff initiated this action against defendant in order to recover the unpaid attorney fees and costs, which amount to $111,004.60. It made claims of breach of contract, quantum meruit, and account stated. The motion for summary disposition relied primarily on the signed fee agreement. Plaintiff also provided dated billing invoices that were purportedly sent to defendant throughout the underlying litigation. Defendant denied that he ever received those invoices.

The trial court granted plaintiff summary disposition of its claims for breach of contract and account stated, determining that there were no genuine issues of material fact precluding summary disposition. The court dismissed the quantum meruit claim.

## II. ANALYSIS

Defendant argues that the trial court erred in concluding that there were not genuine issues of material fact precluding summary disposition. We agree.[1]

## A. BREACH OF CONTRACT

"A fee agreement between an attorney and a client is a contract." *Souden v Souden*, 303 Mich App 406, 416; 844 NW2d 151 (2013). "A party asserting a breach of contract must establish by a preponderance of the evidence that (1) there was a contract (2) which the other party breached (3) thereby resulting in damages to the party claiming breach." *Miller-Davis Co v Ahrens Const, Inc*, 495 Mich 161, 178; 848 NW2d 95 (2014). "[A] contract requires mutual assent or a meeting of the minds on all the essential terms." *Kloian v Domino's Pizza LLC*, 273 Mich App 449, 453; 733 NW2d 766 (2006).

Typically, "[p]arol evidence of contract negotiations, or of prior or contemporaneous agreements that contradict or vary the written contract, is not admissible to vary the terms of a contract which is clear and unambiguous." *Hamade v Sunoco Inc (R & M)*, 271 Mich App 145, 166; 721 NW2d 233 (2006) (quotation marks and citation omitted). However, extrinsic evidence "may be presented to attack the validity of the contract as a whole," including an assertion "that the writing was a sham, not intended to create legal relations . . . ." *Id*. at 167. A sham agreement "is made for an ulterior purpose not disclosed in nor deducible from the terms of the agreement." 71 ALR2d 382, 383. Such an agreement is void because it does not represent a meeting of the minds between the parties as to the terms of the written agreement. See *Mardon v Ferris*, 328 Mich 398, 400; 43 NW2d 904 (1950).

Defendant argues that the fee agreement was a sham. Accepting defendant's affidavit as true, as we must, he has created a question of fact as to the validity of the contract. In the affidavit, defendant states that Tripp told him that the fee agreement was meant to appease plaintiff's board of directors and that Tripp understood defendant did not have any money. The reasonable inference is that defendant did not intend to be bound by the agreement, but was signing it as a favor to Tripp, who he trusted. Plaintiff argues that defendant's affidavit is "self-serving," but the fact that a party's testimony about the events favors his case is neither surprising nor grounds to ignore its contents. Whether to believe Tripp or defendant presents a

---

[1] We review a trial court's decision on a motion for summary disposition de novo. *Auto-Owners Ins Co v Campbell-Durocher Group Painting & Gen Contracting, LLC*, 322 Mich App 218, 224; 911 NW2d 493 (2017). "In reviewing a motion under MCR 2.116(C)(10), this Court considers the pleadings, admissions, affidavits, and other relevant documentary evidence of record in the light most favorable to the nonmoving party to determine whether any genuine issue of material fact exists to warrant a trial." *Walsh v Taylor*, 263 Mich App 618, 621; 689 NW2d 506 (2004). There is a genuine issue of material fact "when reasonable minds could differ on an issue after viewing the record in the light most favorable to the nonmoving party." *Auto-Owners Ins Co*, 322 Mich App at 224.

credibility determination for the trier of fact and is not an appropriate consideration for a trial court deciding a motion for summary disposition. See *Innovative Adult Foster Care, Inc v Ragin*, 285 Mich App 466, 480; 776 NW2d 398 (2009) (stating that a trial court "may not . . . make determinations of credibility when deciding a motion for summary disposition."). See also *SSC Assoc Ltd Partnership v Gen Retirement Sys of Detroit*, 192 Mich App 360, 364; 480 NW2d 275 (1991) (explaining that affidavits "do not resolve issues of fact. Their purpose is to help the court determine whether an issue of fact exists.").

Further, when the evidence is viewed in the light most favorable to defendant, there is support for his version of events. Again, plaintiff has not yet explained why the fee agreement would have been signed in April 2015 rather than at the outset of the attorney-client relationship. See *Rippery v Wilson*, 280 Mich 233, 243; 273 NW 552 (1937) (stating that if a fee agreement is "made after the [attorney-client] relationship is begun, it is subject to scrutiny by the court in case of dispute."). The fact that the hourly fee agreement was signed so long after the representation began and the fact that it is prospective only supports defendant's argument that he did not orally agree to an hourly fee arrangement at the outset of the case. Moreover, defendant provides a plausible explanation for why Tripp would have pressed him to sign an agreement in April 2016,[2] which was the time when the underlying action was dismissed. At that point plaintiff had accrued over a $100,000 in attorney fees and costs and seeking recovery without a written fee agreement would be undesirable.

In sum, we conclude that there is sufficient support for defendant's position that the fee agreement he later signed was a sham to create a question of fact. To be clear, however, we are not making any findings of fact or credibility determinations. Further, we note that plaintiff has also presented an affidavit from another firm member, Lynn Brimer, attesting that at a March 11, 2016 meeting defendant acknowledged that he signed the hourly fee agreement and that the fees charged were valid. But for purposes of summary disposition we must view the evidence a light most favorable to defendant, the nonmoving party. Doing so in this case raises a material question of fact of whether there was mutual assent to form a valid contract. Therefore, the trial court erred when it granted plaintiff summary disposition on its breach of contract claim.

## B. QUANTUM MERUIT

The trial court dismissed the claim of quantum meruit because the court granted plaintiff summary disposition on the breach of contract claim. See *Meisner Law Group PC v Weston Downs Condo Ass'n*, 321 Mich App 702, 726; 909 NW2d 890 (2017) ("For quantum meruit or unjust enrichment to apply, there must not be an express contract between the parties covering the same subject matter."). Therefore, our reversal of the trial court's breach of contract ruling necessarily revives the quantum meruit claim.

---

[2] As noted, the agreement is dated as having been made on April 30, 2015. But defendant's proposed testimony creates a question of fact as to when the signing actually occurred.

## C. ACCOUNT STATED

We also agree with defendant that there is a material question of fact precluding summary disposition of plaintiff's action to recover on account stated.

An account stated is a "contract based on assent to an agreed balance, which, like all contracts, must be created through mutual assent." *Dunn v Bennett*, 303 Mich App 767, 770-771; 846 NW2d 75 (2013) (quotation marks and citation omitted). "[P]arties assent to a sum as the correct balance due from one to the other; and whether this operation has been performed or not, in any instance, must depend upon the facts." *Id*. at 771 (italics, quotation marks and citation omitted). A party's assent can be express or inferred. *Id*. A party's assent can be inferred "when the party makes payments on the amount due or receives an accounting and fails to object within a reasonable time." *Id*. "[W]hen silence forms the basis for inferring assent to a sum owed, the circumstances involved must support an inference of assent." *Id*. at 773.

As noted, Brimer attested that during a March 11, 2016 meeting defendant agreed that he owed fees in the amount stated. However, in his affidavit defendant denied admitting that he owed plaintiff money. Brimer's and defendant's contradictory affidavits create a question of fact on the issue of whether defendant expressly assented to the account stated.

Plaintiff also provided invoices demonstrating that defendant owed $111,004.60 in fees and costs. However, defendant denies receiving them, and in its motion for summary disposition plaintiff did not proffer any evidence of mailing or receipt. In order to infer a party's acceptance of an account stated, it must be shown that the party *received* an accounting, but failed to make a timely objection. As plaintiff failed to demonstrate that defendant received the invoices, it cannot yet prevail on an account stated claim premised on inferred assent because there is a question of fact. In sum, the trial court erred when it granted plaintiff summary disposition on its account stated claim because defendant denies expressly consenting to the account stated and plaintiff failed to establish that defendant received the relevant invoices.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Douglas B. Shapiro
/s/ Elizabeth L. Gleicher
/s/ Brock A. Swartzle

-5-