*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

---

SPINE AND JOINT INSTITUTE OF MICHIGAN, LLC,

        Plaintiff/Counterdefendant-Appellant,

v

COOLIDGE RETAIL MANAGEMENT, LLC,

        Defendant/Counterplaintiff/Third-Party Plaintiff-Appellee,

and

ABE BAYDOUN,

        Third-Party Defendant-Appellant,

and

RICARDO BORREGO and HILLCREST CAPITAL MANAGEMENT,

        Third-Party Defendants.

UNPUBLISHED
January 30, 2025
11:37 AM

No. 364749
Oakland Circuit Court
LC No. 2021-188157-CB

---

SPINE AND JOINT INSTITUTE OF MICHIGAN, LLC,

        Plaintiff/Counterdefendant-Appellant,

v

COOLIDGE RETAIL MANAGEMENT, LLC,

No. 367379
Oakland Circuit Court
LC No. 2021-188157-CB

---

-1-

Defendant/Counterplaintiff/Third-
Party Plaintiff/Garnishee Plaintiff-
Appellee,

and

ABE BAYDOUN,

Third-Party Defendant-Appellant,

and

RICARDO BORREGO and HILLCREST CAPITAL
MANAGEMENT,

Third-Party Defendants,

and

44TH JUDICIAL DISTRICT COURT,

Garnishee Defendant.

Before: FEENEY, P.J., and SWARTZLE and CAMERON, JJ.

PER CURIAM.

In Docket No. 364749, plaintiff/counterdefendant, Spine and Joint Institute of Michigan, LLC (SJI), and third-party defendant, Abe Baydoun, appeal as of right the award of $800,116 in favor of defendant/counterplaintiff and third-party plaintiff, Coolidge Retail Management, LLC (Coolidge). In Docket No. 367379, SJI and Baydoun appeal as of right the order garnishing a $90,000 district-court bond in favor of Coolidge.[1] We affirm.

## I. BACKGROUND

### A. FACTS PERTAINING TO DOCKET NO. 364749

SJI is a surgical group that sought to operate out of property located in Royal Oak, Michigan. SJI and Coolidge entered into a build-to-suit lease agreement in late 2017. The lease's 15-year term was to begin once Coolidge notified SJI that the construction was complete. In

---

[1] This Court consolidated the two appeals. *Spine & Joint Institute of Mich v Coolidge Retail Mgt*, unpublished order of the Court of Appeals, entered March 20, 2024 (Docket Nos. 364749 & 367379).

-2-

anticipation of this lease, Hillcrest Capital Partners, Dr. Ricardo Borrego, and Baydoun executed guaranty agreements to "guarantee the full, faithful and timely payment and performance by [SJI] of all of the payments, covenants and other obligations of [SJI] under or pursuant to the Lease."

SJI and Coolidge thereafter amended the lease four times. Under the fourth amendment, executed on October 8, 2020, Coolidge agreed to perform extra work in exchange for SJI's agreement to an initial rental amount of $71,004.28 per month. Importantly, in this fourth amendment, the parties acknowledged that the delivery date of the premises was August 10, 2020. SJI also agreed that Coolidge had completed its construction work. Notwithstanding the fact that Coolidge had completed its work, there was a "punch list" of items attached to the fourth amendment that Coolidge promised it would complete within 90 days.

Consistent with the fourth amendment, SJI received possession of the premises on August 10, 2020, and started paying rent. However, at some point, SJI became delinquent on the rent payments, and Coolidge validly terminated the lease on April 5, 2021. SJI eventually paid the rent for April. It remained on the premises until January 5, 2022, but did not pay any rent after the April 2021 payment. After SJI refused to leave the building, Coolidge filed suit for eviction in district court. SJI then initiated this suit in circuit court, alleging breach of contract.

During the eviction proceeding, SJI maintained that eviction was improper because Coolidge had breached the lease first by not completing the work contemplated in the fourth amendment within 90 days. The district court awarded possession in favor of Coolidge and executed a writ of eviction. SJI appealed to the circuit court, but was unsuccessful.

Coolidge then filed a combined counterclaim and third-party complaint in the circuit court, alleging breach of contract and fraud against SJI and the third-party defendants, Baydoun, Borrego, and Hillcrest. Coolidge moved for summary disposition on SJI's breach-of-contract claim under MCR 2.116(C)(7) and MCR 2.116(C)(10). It also argued that it was entitled to summary disposition on its breach-of-contract and fraud claims against SJI and the guarantors.

The circuit court granted Coolidge's motion, concluding dismissal was proper because SJI's claim was barred under res judicata. The circuit court also held that Coolidge was entitled to judgment on its breach-of-contract claim against SJI, because there was no question of fact that SJI remained on the premises without paying rent, which constituted a breach of the lease. The circuit court, however, left the issue of damages to be determined at trial. Because there was no question of fact that Hillcrest, Borrego, and Baydoun had executed a guaranty, the circuit court ruled that they were liable for any amounts SJI owed.[2]

At the conclusion of a two-day bench trial, the circuit court ruled that Coolidge's fraud claim was barred by the merger clause in the lease. With respect to Coolidge's breach-of-contract claim, the circuit court noted that SJI clearly violated the lease agreement by continuing to occupy the premises after the lease was terminated. It found that the damages were $800,116, and asserted

---

[2] The circuit court denied Coolidge's motion for summary disposition of its fraud counterclaim, stating that, while there was "overwhelming evidence" of fraud, such a determination is for the trier of fact, not the court.

that even if a "higher court" disagreed as to whether Coolidge was entitled to damages after the termination of the lease, Coolidge could also prevail under an unjust enrichment theory.

## B. FACTS PERTAINING TO DOCKET NO. 367379

The issues in Docket No. 367379 involve the proper disposition of funds SJI posted with the district court as bond.

In November 2021, SJI posted $90,000 with the district court as bond, pursuant to MCR 4.201(N)(4). After SJI's appeal to the circuit court was unsuccessful, a dispute arose as to which party was entitled to the $90,000. SJI claimed that the funds were the normal bond associated with pursuing an appeal, while Coolidge argued that the funds were part of an escrow bond securing a month of rent. The district court ruled that SJI was entitled to the funds. Coolidge appealed this decision to the circuit court, and then to this Court. None of these appeals was successful.[3] While the appeal to this Court was pending, SJI's counsel filed an attorney lien over the $90,000.

By the time this Court denied Coolidge's appeal in the district court case, the circuit court in the instant case had already entered its judgment against SJI. Coolidge then sought to garnish the $90,000 held by the district court as partial satisfaction of the judgment. The parties filed competing motions for summary disposition under MCR 2.116(C)(10) as to whom the funds should be disbursed. SJI argued that, by virtue of the attorney lien, which predated the garnishment, the funds should go to SJI's counsel. Coolidge argued that the attorney lien did not apply to the funds because liens are only applicable when a counsel's service secures any judgment or recovery. The $90,000 at issue was not secured through any judgment or recovery—it was a posted bond.

The circuit court ruled that there was no question of material fact that the $90,000 bond was posted by SJI, the bond was held by the district court, and the funds were to be returned to SJI after Coolidge's appellate rights were exhausted. It also ruled that there was no genuine issue of material fact that the $90,000 was SJI's personal property and that Coolidge was entitled to garnish. The circuit court also ruled that the attorney lien could not attach to the bond because the bond was not a judgment or fund recovered as a result of counsel's services. Consequently, the circuit court granted summary disposition in favor of Coolidge and ordered the district court to release the bond to Coolidge. These appeals followed.

## II. STANDARDS OF REVIEW

This Court reviews a trial court's decision on a motion for summary disposition de novo. *Odom v Wayne Co*, 482 Mich 459, 466; 760 NW2d 217 (2008). We further review de novo the validity of a lien and whether a party has standing to raise an issue on appeal. See *Ypsilanti Twp*

---

[3] See *Coolidge Retail Mgt v Orthopedic & Vascular Surgical Institute*, unpublished order of the Court of Appeals, entered January 25, 2023 (Docket No. 364200) (denying Coolidge's appeal "for lack of merit in the grounds presented").

*v Kircher*, 281 Mich App 251, 281; 761 NW2d 761 (2008); *Dep't of Consumer & Indus Servs v Shah*, 236 Mich App 381, 384; 600 NW2d 406 (1999).

We also review de novo any questions of law, including the interpretation of contacts and the application of the doctrines of res judicata and collateral estoppel. *King v Munro*, 329 Mich App 594, 599; 944 NW2d 198 (2019).

> Absent an ambiguity or internal inconsistency, contractual interpretation begins and ends with the actual words of a written agreement. When interpreting a contract, our primary obligation is to give effect to the parties' intention at the time they entered into the contract. To do so, we examine the language of the contract according to its plain and ordinary meaning. If the contractual language is unambiguous, courts must interpret and enforce the contract as written. [*Innovation Ventures v Liquid Mfg*, 499 Mich 491, 507; 885 NW2d 861 (2016) (quotation marks and citations omitted).]

This Court reviews a trial court's decision whether to grant leave to amend a pleading for an abuse of discretion. *Boylan v Fifty Eight LLC*, 289 Mich App 709, 727; 808 NW2d 277 (2010). A court abuses its discretion when it selects an outcome falling outside the range of reasonable and principled outcomes. *Id.*

## III.  ISSUES IN DOCKET NO. 364749

## A.  SJI'S BREACH-OF-CONTRACT CLAIM

SJI first argues that the circuit court erred when it granted Coolidge's motion for summary disposition of SJI's breach-of-contract claim on the basis of res judicata. We hold that SJI is barred from relitigating the underlying issue.

Coolidge moved for summary disposition under MCR 2.116(C)(7). A party is entitled to summary disposition under MCR 2.116(C)(7) if, among other things, a "prior judgment" has been entered. *Clay v Doe*, 311 Mich App 359, 362; 876 NW2d 248 (2015).

> A party may support a motion under MCR 2.116(C)(7) by affidavits, depositions, admissions, or other documentary evidence. If such material is submitted, it must be considered. MCR 2.116(G)(5). Moreover, the substance or content of the supporting proofs must be admissible in evidence. . . .  Unlike a motion under subsection (C)(10), a movant under MCR 2.116(C)(7) is not required to file supportive material, and the opposing party need not reply with supportive material. The contents of the complaint are accepted as true unless contradicted by documentation submitted by the movant. [*Maiden v Rozwood*, 461 Mich 109, 119; 597 NW2d 817 (1999).]

"The doctrine of res judicata is employed to prevent multiple suits litigating the same cause of action." *Adair v Michigan*, 470 Mich 105, 121; 680 NW2d 386 (2004). It "bars a second, subsequent action when (1) the prior action was decided on the merits, (2) both actions involve the same parties or their privies, and (3) the matter in the second case was, or could have been, resolved

in the first." *Id*. Michigan law takes a broad approach to res judicata—"it bars not only claims already litigated, but also every claim arising from the same transaction that the parties, exercising reasonable diligence, could have raised but did not." *Id*.

We disagree with the circuit court that SJI's breach-of-contract claim was barred under res judicata. Res judicata implicates claim preclusion, *Bennett v Mackinac Bridge Auth*, 289 Mich App 616, 629; 808 NW2d 471 (2010), and SJI's breach-of-contract claim could not have been brought in the district court. SJI was seeking damages in excess of $25,000, which would divest the district court of jurisdiction. See MCL 600.8301.

Nevertheless, collateral estoppel necessarily precludes the relitigation of this issue.

> Collateral estoppel bars relitigation of an issue in a new action arising between the same parties or their privies when the earlier proceeding resulted in a valid final judgment and the issue in question was actually and necessarily determined in that prior proceeding. The doctrine bars relitigation of issues when the parties had a full and fair opportunity to litigate those issues in an earlier action. A decision is final when all appeals have been exhausted or when the time available for an appeal has passed. [*Leahy v Orion Twp*, 269 Mich App 527, 530; 711 NW2d 438 (2006) (citations omitted).]

SJI does not dispute that it and Coolidge were parties in the district court action or that the district court reached a judgment. SJI instead argues that the district court only ruled that Coolidge had not *substantially* breached the lease; it did not rule that Coolidge never breached the lease.

MCL 600.5714(1)(c)(*i*) provides that a person who is entitled to possession of premises can recover possession by summary proceedings "[w]hen a person holds over premises . . . [a]fter termination of the lease, pursuant to a power to terminate provided in the lease or implied by law." SJI asserted that Coolidge's claim for possession was barred because Coolidge failed "to make the premises available as required under the Lease, with all required landlord build out, which was a condition precedent to Defendant's obligations under the agreement." MCL 600.5720 lists several circumstances that preclude the entry of judgment for possession in the summary proceeding. SJI's defense implicated MCL 600.5720(1)(f), that provides entry of a judgment for possession is precluded if "the [landlord] committed a breach of the lease which excuses the payment of rent if possession is claimed for nonpayment of rent." In ruling in Coolidge's favor, the district court necessarily determined that Coolidge had not committed a breach of the lease that excused rent payment.

In the circuit court, SJI alleged that Coolidge failed to "deliver a compliant and operative Property" and described the premises as "inoperable." While the types of breaches that excuse rent payment are not defined in the statute, caselaw indicates that such breaches must impact the tenant's ability to use and enjoy the leased premises. For instance, in *Lynder v SS Kresge Co*, 329 Mich 359, 366; 45 NW2d 319 (1951), our Supreme Court noted that " '[d]eprivation of the beneficial use and enjoyment of the leased premises as a result of the breach has been held to be sufficient to justify the abandonment of the premises by the tenant.' " (Citation omitted.) The Court held that if a landlord covenants to make repairs or improvements to the leased premises and fails to do so, the tenant may avoid liability for rent. *Id*.

In this case, SJI alleged a breach that resulted in the premises being noncompliant and "inoperative." This would qualify as a significant breach that would excuse the payment of rent. But, the district court decided this issue when it ruled that Coolidge had committed no breach to excuse the payment of rent. It considered and rejected the precise issue presented in the instant case that Coolidge first substantially breached the lease. SJI is therefore barred from relitigating the issue in this subsequent action, and the circuit court properly granted Coolidge's motion for summary disposition on the basis of MCR 2.116(C)(7).

## B. COOLIDGE'S BREACH-OF-CONTRACT COUNTERCLAIM

SJI next argues that the circuit court erred by granting summary disposition in favor of Coolidge on Coolidge's breach-of-contract counterclaim. We disagree.

"A party asserting a breach of contract must establish that (1) there was a contract (2) which the other party breached (3) thereby resulting in damages to the party claiming the breach." *Miller-Davis Co v Ahrens Constr, Inc*, 495 Mich 161, 178; 848 NW2d 95 (2014). Coolidge moved for summary disposition, arguing SJI breached the lease agreement when it continued to possess the premises after the termination of the lease, but did not pay rent. Coolidge attached the lease agreement to its motion, which contained the following provisions:

> 2. <u>Term</u>. The term of this Lease ("Term") shall begin on the date Landlord notifies Tenant in writing that the Premises are available for Tenant's occupancy ("Delivery Date") and shall end on the last day of the fifteenth (15th) Lease Year, unless earlier terminated as hereinafter provided.
>
> * * *
>
> 14. <u>Default</u>. If Tenant fails to pay any Rent within ten (10) days after same is due, or fails to perform any other terms, conditions or covenants of this Lease for more than thirty (30) days after written notice from Landlord, or if Tenant permits this Lease to be taken under any writ of execution, then Landlord, besides other rights or remedies it may have, shall have the right to terminate this Lease and/or the immediate right of re-entry and may remove all persons and property from the Premises and such property may be stored at Tenant's sole cost, without notice or resort to legal process and without being deemed guilty of trespass, or becoming liable for any loss or damage which may be occasioned thereby.
>
> * * *
>
> 16. <u>Holding Over</u>. Any holding over after the expiration of the Term shall be deemed a month to month tenancy at Base Rent of 110% of the then current Base Rent for the first month and 150% for each month thereafter of the then-current Base Rent prior to the month to month tenancy provided for in Section 3 hereof, together with all other charges herein provided, and shall otherwise be on the terms and conditions of this Lease.

Under these terms, the tenant was liable for rent payments to the landlord throughout the "Term" of the lease. If the tenant continued to possess the premises after the Term expired, they would be considered "holding over." There were two ways the Term could expire: (a) on the "last day of the fifteenth (15th) Lease Year," or (b) under another termination provision within the lease. Paragraph 14 outlines the manner in which the Term expired in this case: the tenant failed to pay rent, so the landlord terminated the lease. Once the lease was terminated, the Term was expired.

Here, it is undisputed that Coolidge validly terminated the lease on April 5, 2021, for SJI's failure to pay rent. Thus, the Term expired on that date. Because the Term was expired, SJI's continued possession of the premises meant it was considered a holdover tenant under Paragraph 16. SJI's failure to pay rent as provided by Paragraph 16 was a breach of contract. The trial court correctly concluded as such and properly granted summary disposition in favor of Coolidge. Given this conclusion, we need not consider whether the trial court correctly determined SJI was unjustly enriched.

## C. BAYDOUN'S LIABILITY AS A GUARANTOR

Baydoun argues that the circuit court erred by imposing liability on him as a guarantor. We disagree.

Baydoun entered into a guaranty agreement with Coolidge. The first paragraph of the agreement provides:

> The undersigned does hereby guarantee the full, faithful and timely payment and performance by Tenant of all of the payments, covenants and other obligations of Tenant *under or pursuant to the Lease*. If Tenant shall *default* at any time in the payment of any rent or any other sums, costs or charges whatsoever, or in the performance of any of the other covenants and obligations of Tenant, *under or pursuant to the Lease*, after applicable notice and grace periods afforded Tenant *under the Lease*, then the undersigned, at its expense, shall on demand of Landlord fully and promptly, and well and truly, pay all rent, sums, costs and charges to be paid by Tenant, and perform all the other covenants and obligations to be performed by Tenant, *under or pursuant to the Lease*, and in addition shall on Landlord's demand pay to Landlord any and all sums due to Landlord, including (without limitation) all interest on past due obligations of Tenant, costs advanced by Landlord, and damages and all expenses (including attorney's fees and litigation costs), *that may arise in consequence of Tenant's default*. The undersigned hereby waives all requirements of notice of the acceptance of this Guaranty. [Emphasis added.]

Baydoun argues that because his obligation as guarantor only arises in conjunction with SJI's *contractual* obligations, and because Coolidge's breach-of-contract claim fails as a matter of law, he cannot be liable. We agree that the language of the guaranty makes it clear that Baydoun's liability arises with SJI's breach of the lease. The trial court properly granted summary disposition of Coolidge's breach-of-contract counterclaim. It therefore follows that Baydoun is liable as a guarantor under the above agreement. Accordingly, we affirm the trial court's grant of summary disposition in favor of Coolidge against Baydoun.

SJI also argues that this case should be assigned to a different judge on remand. Because we are affirming in Docket No. 364749, there is no need to address SJI's claim of judicial reassignment.

## IV. ISSUES IN DOCKET NO. 367379

Finally, SJI argues that the circuit court erred by granting summary disposition in favor of Coolidge on its attempt to garnish the $90,000 bond held by the district court. We disagree.

When evaluating a motion for summary disposition brought under MCR 2.116(C)(10), "a court considers the entire record in the light most favorable to the party opposing the motion, including affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties." *Corley v Detroit Bd of Ed*, 470 Mich 274, 278; 681 NW2d 342 (2004). The motion should be granted "if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Kisiel v Holz*, 272 Mich App 168, 170; 725 NW2d 67 (2006).

"A charging lien is an equitable right to have the fees and costs due for services secured out of the judgment or *recovery* in a particular suit." *Dunn v Bennett*, 303 Mich App 767, 778; 846 NW2d 75 (2013) (quotation marks and citation omitted). SJI posted the $90,000 at issue as a bond so it could appeal the district court's grant of possession to Coolidge. The bond was posted under MCR 4.201(N)(4)(b), which provides, in relevant part:

> A defendant who appeals must file a bond providing that if the defendant loses, he or she will pay
>
> (*i*) the appeal costs,
>
> (*ii*) the amount due stated in the judgment, and
>
> (*iii*) damages from the time of forcible entry, the detainer, the notice to quit, or the demand for possession.

"An appeal bond is a form of security designed to protect an appellee's rights during the pendency of an appeal." *Int'l Outdoor, Inc v SS Mitx, LLC*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket Nos. 359082 and 359811); slip op at 18. In other words, the bond funds could be viewed as being held in trust by the district court to ensure compliance with the appeal conditions. Therefore, as a matter of course, the appellant is entitled to a return of that security.[4]

Consequently, the bond funds held by the district court were not a judgment or funds "recovered" by SJI or its counsel—SJI was always legally entitled to them. Indeed, SJI's argument is inconsistent with the meaning of the word "recovery." See *Merriam-Webster's Collegiate Dictionary* (11th ed) (defining "recover," in pertinent part, as "to get back" or "to gain by legal process"). While Coolidge argued it was entitled to the funds because it thought that the bond

---

[4] Indeed, the district court even entered an order specifying that the $90,000 bond was to be returned to SJI, pending Coolidge's appellate rights.

represented an escrow bond of rent, that belief was mistaken and was rejected by the courts below. SJI's successful defense of Coolidge's attempt to garnish merely maintained the status quo, i.e., there was no "gain." SJI secured no true "recovery." With no recovery, the circuit court properly ruled that no attorney lien can attach to the bond.

*Dunn*, 303 Mich App 767, supports our conclusion. In *Dunn*, the plaintiff-attorney sued the defendant for failing to pay over $100,000 in owed fees. *Id*. at 772. The plaintiff had represented the defendant in earlier tax-lien proceedings involving the IRS. *Id*. at 769. The plaintiff's two-year representation resulted in a settlement, under which the property was to be sold, the IRS would get $25,000 from the proceeds, and the defendant would receive about $40,000. *Id*. This Court, without elaborating, held that an attorney charging lien could not attach to the $40,000 the defendant received because it did not constitute a "recovery." *Id*. at 778.

The situation in this case is similar to that in *Dunn*. First, as a result of the *Dunn* plaintiff's services, the defendant was able to obtain a settlement and retain $40,000 from the sale of his home. *Id*. at 769. Likewise, in this case, as a result of counsel's services, SJI was able to retain the $90,000 bond. Second, the defendant in *Dunn*, as the owner of the home, was already entitled to those funds. *Id*. Thus, although the plaintiff's services helped the defendant defend against the IRS, the $40,000 was not a true "recovery." The same applies here. SJI was already entitled to the $90,000 bond. Although counsel helped it defend against Coolidge's attempt to characterize the bond as an escrow bond, that successful defense did not transform the successful *retention* of the funds into a "recovery." As a result, the circuit court did not err by ruling that the attorney lien did not attach to the bond funds.

SJI next argues that the circuit court erred by taking its ruling a step further and ordering the district court to disburse the $90,000 to Coolidge. SJI claims that the circuit court should have allowed the district court, as a garnishee defendant, to allow other parties with objections to raise them under MCR 3.101(K). SJI avers that there was an unnamed third-party who actually posted the $90,000 with the district court and who was denied the opportunity to raise objections to the garnishment.

Coolidge correctly contends that SJI lacks standing to assert the rights of third-parties.[5] Under MCR 7.203(A), this "[C]ourt has jurisdiction of an appeal of right filed by an *aggrieved* party." (Emphasis added.) "In order to have standing, a person must have a legally protected interest that is in jeopardy of being adversely affected by the challenged action." *Novak v Nationwide Mut Ins Co*, 235 Mich App 675, 692; 599 NW2d 546 (1999) (quotation marks and citation omitted). "An aggrieved party is not one who is merely disappointed over a certain result. Rather, to have standing on appeal, a litigant must have suffered a concrete and particularized injury" arising from "the actions of the trial court[.]" *Federated Ins Co v Oakland Co Rd Comm*, 475 Mich 286, 291-292; 715 NW2d 846 (2006).

---

[5] Notably, in its reply brief on appeal, SJI does not even attempt to suggest that it somehow has standing to raise this argument.

SJI lacks standing to raise this argument.  It openly admits that it is raising this argument for the benefit of an unnamed third-party and not itself.  The concrete and particularized injury would fall on that third-party by being precluded from raising objections in the district court under MCR 3.101(K).  Therefore, we decline to address this argument.

Affirmed.

/s/ Kathleen A. Feeney
/s/ Brock A. Swartzle
/s/ Thomas C. Cameron