*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PARMINDER K. KHABRA and MOHAN S. KHABRA,

Plaintiffs/Counterdefendants-
Appellees,

v

AVTAR S. MADAHAR and UNITED
VETERINARY HOSPITALS, PLLC,

Defendants/Counterplaintiffs-
Appellants.

UNPUBLISHED
August 21, 2025
9:39 AM

No. 368447
Wayne Circuit Court
LC No. 20-006904-CB

Before: REDFORD, P.J., and RIORDAN and BAZZI, JJ.

PER CURIAM.

In this member oppression action, defendants/counterplaintiffs, Avtar S. Madahar ("Avtar") and United Veterinary Hospitals, PLLC ("UVH") (collectively, "defendants"), appeal as of right the trial court's findings of fact, conclusions of law, and judgment, in favor of plaintiffs/counterdefendants, Parminder K. Khabra ("Parminder") and Mohan S. Khabra ("Mohan") (collectively, "plaintiffs"). Defendants further substantially challenge the court's order granting summary disposition, in part, to plaintiffs under MCR 2.116(C)(10) (no genuine issue of material fact), and the trial court's opinion and order denying defendants' motion for judgment notwithstanding the verdict and/or new trial. We affirm.

## I. FACTUAL BACKGROUND

The underlying matter concerns a dispute between members of UVH, a professional limited liability company (PLLC). In 2012, Avtar, a licensed veterinarian, sought to establish his own veterinary practice, and he identified a building located in Westland, Michigan, as the intended site for the business. Rather than proceed with financing the building through a bank or mortgage lender, Avtar contended that Mohan, who is Avtar's brother-in-law, and Parminder, Mohan's wife, offered to provide funding for the venture with an interest-free loan. In contrast, plaintiffs testified that Avtar approached Mohan in February 2012 or March 2012, seeking assistance in establishing

-1-

his veterinary practice. After discussing the matter among themselves, and given the substantial nature of the investment, plaintiffs indicated that they were willing to enter into a partnership arrangement with Avtar in return for the provided capital.

Avtar subsequently provided plaintiffs with a copy of a prior operating agreement to serve as a foundation for the UVH operating agreement. Relying on Avtar's expertise, plaintiffs used this document in drafting the agreement, and the parties did not retain outside counsel to review the final operating agreement. On July 1, 2012, plaintiffs, Avtar, and Avtar's wife, Ravinder K. Madahar, executed an operating agreement establishing UVH as a PLLC; the agreement was signed by all parties. At all relevant times, UVH had four members—plaintiffs, Avtar, and Ravinder—each of whom held a 25% ownership interest in the entity; Avtar was the only licensed person serving as a member.[1] The entity's tax filings between 2013 and 2018 further reflected that plaintiffs, Avtar, and Ravinder individually maintained a 25% ownership interest in UVH, and they were all members of the PLLC. Plaintiffs contributed substantial capital to fund UVH's initial operations, including a $145,000 home equity loan secured by their personal residence and an additional $85,000 in funds, all of which were used for the purchase of the building, remodeling, and acquisition of necessary equipment. On September 12, 2012, Avtar filed UVH's articles of organization with the State of Michigan Department of Licensing and Regulatory Affairs ("LARA"), indicating UVH was organized as a PLLC.

Plaintiffs asserted that they played a substantial role in the formation and operation of UVH. Specifically, Mohan undertook numerous tasks related to the remodeling of the UVH property and the implementation of its computer system, while Parminder and plaintiffs' daughter, Amarpreet Khabra, were primarily responsible for the entity's administrative and financial functions. Avtar denies the aforementioned contentions. The required renovations were completed by December 2012, and UVH commenced operations shortly thereafter. On January 24, 2013, plaintiffs transferred ownership of the property to UVH via a quitclaim deed. In March 2019, plaintiffs, Avtar, Ravinder, and Amarpreet met at Avtar's residence to discuss matters related to UVH, including the repayment of plaintiffs' investment in the entity. While Avtar confirmed that the meeting occurred, he contended that financial matters, such as the repayment of plaintiffs' investment, were not discussed. The March 2019 meeting was the final in-person interaction between the parties, and despite plaintiffs' repeated attempts to communicate with Avtar, he was purportedly unresponsive. In March 2019, Parminder additionally observed a shift in Avtar's behavior, noting a decreased willingness to provide her and Amarpreet with the information necessary to administer tasks related to UVH's finances.

On March 22, 2019, two transactions were executed from UVH's bank accounts: a $145,000 transfer to plaintiffs, followed by a second transfer of $31,836 to plaintiffs. Plaintiffs testified that the $145,000 transaction was used to repay the home equity loan to the bank, while

---

[1] UVH was initially formed as a five-member PLLC, with plaintiffs individually holding 20% ownership interest, plaintiffs' son, Jasdeep Khabra, holding 10% ownership interest, and Avtar and Ravinder each holding 25% ownership interest. However, shortly after the formation of UVH, Jasdeep relinquished his ownership interest to plaintiffs for tax purposes, resulting in four remaining members, each holding a 25% ownership interest in the company.

the $31,836 transfer represented compensation for Avtar's outstanding debt. Following the transactions, plaintiffs and Avtar exchanged emails in which Avtar denied any knowledge of or authorization for the transfers, while plaintiffs maintained that the funds were reimbursements for their investments and loans.

On June 3, 2019, Avtar transferred approximately $178,000 from the UVH bank accounts to separate accounts inaccessible to plaintiffs; Avtar stated that he made the transfers "because [plaintiffs] were stealing from the bank account. Their name was there. I was scared that they would transfer all of the money to their personal bank account." On June 18, 2019, Avtar changed UVH's resident agent's address with the LARA to his home address. In the entity's 2019 and 2020 tax documents, Avtar reported that he held 100% ownership of UVH. In the 2020 annual report and annual statement for UVH, Avtar similarly reported himself as the sole member of UVH. Regarding the aforementioned conduct, Avtar testified that he did not take any formal steps to transfer plaintiffs' interests or membership in the entity; rather, he filed the tax documents on the basis of advice from his accountant. On December 11, 2019, plaintiffs transferred ownership of the UVH building to themselves through a quitclaim deed. Plaintiffs additionally transferred the title of van, which was purchased in 2016 with UVH funds to assist with transporting large items related to the entity's operations, to themselves allegedly because Avtar refused to pay the vehicle's insurance.[2] Parminder did not inform Avtar of the aforementioned transfers because the parties were not communicating at that time.

## II. PROCEDURAL BACKGROUND

In June 2020, plaintiffs filed a complaint advancing four counts against defendants; (1) breach of fiduciary duties, (2) breach of contract, (3) injunctive relief, and (4) dissolution of the company and appointment of a receiver. Plaintiffs subsequently filed an amended complaint reiterating their previous factual allegations and claims, and further asserting alternative claims against defendants for membership oppression under MCL 450.4515 and for unjust enrichment. Defendants filed a counterclaim contending that (1) Avtar formed UVH as the sole member and manager, (2) the UVH operating agreement was unenforceable as only licensed persons may serve as members of a PLLC, which plaintiffs were not, and (3) plaintiffs "wrongfully withdrew money, transferred property both real and personal and otherwise wrongfully took money and property from [UVH] without any basis in law or agreement."

Following the filing of various documents, plaintiffs moved for summary disposition under MCR 2.116(C)(10) in November 2021, arguing that (1) Avtar's conduct substantially interfered with the interests of plaintiffs as members of UVH, and (2) Avtar retained a substantial benefit from plaintiffs as he singularly maintained the value and profits of UVH, despite plaintiffs' interests in the entity. Defendants responded that there was a genuine issue of material fact existed as to whether plaintiffs could assert claims for membership oppression or breach of contract, given that they were not licensed persons as required for members of a PLLC. In July 2022, the trial

---

[2] While the van was technically purchased solely using UVH funds, the parties initially agreed to split the cost of the vehicle equally, with UVH paying $22,164, and plaintiffs covering the remaining $22,164. However, because Avtar still owed plaintiffs $27,000 for a separate personal loan, the parties agreed to use a disbursement from UVH to cover the van expense.

court entered an order granting, in part, plaintiffs' motion for summary disposition regarding their member oppression and unjust enrichment claims, stating, "Plaintiffs are members of [UVH] and a trial or hearing will be held on the amount of Plaintiffs' damages and/or equitable relief for member oppression pursuant to MCL § 450.4515 and for unjust enrichment at a date and time to be set by the court."

The trial court held a two-day bench trial in December 2022, during which an expert in the field of valuations and damage analysis, testified, in addition to a court-appointed receiver, plaintiffs, and Avtar. On July 29, 2023, the trial court issued its findings of fact, conclusions of law, and judgment, in favor of plaintiffs. The court addressed plaintiffs' member oppression claim, stating that (1) "Consistent with its prior Order, this Court finds that UVH has four members, each with a 25% interest," which consisted of plaintiffs, Avtar, and Ravinder, and (2) "This Court further finds that, in early 2019, [Avtar] took control of UVH and engaged in willfully unfair and oppressive conduct against and/or unjustly enriched himself at the expense of Plaintiffs." The trial court further resolved, because plaintiffs demonstrated that "[Avtar] engaged in willfully unfair and oppressive conduct against and/or unjustly enriched himself at the expense of Plaintiffs," that (1) Avtar was required to purchase plaintiffs' interest in UVH at the entity's fair value as of December 31, 2019, (2) plaintiffs were entitled to monetary damages for their for out-of-pocket expenditures and accrued interest on their economic losses caused by Avtar's oppressive conduct, and (3) plaintiffs may retain the UVH property, and the gross judgment against defendants would be reduced accordingly.

Regarding defendants' counterclaim, the trial court reiterated that it previously determined plaintiffs, Avtar, and Ravinder, were all members of UVH despite defendants' contentions, and plaintiffs "did not wrongfully withdraw money or transfer real or personal property from UVH, and that any such withdrawals and/or transfers Plaintiffs performed were authorized by UVH's members and/or substantially necessary to preserve UVH's assets, and that, in any event, neither [Avtar] nor UVH were damaged." The trial court advanced that because it concluded plaintiffs' financial interest in UVH was severed on December 31, 2019, and because "no private right of action under MCL 450.4904 (or the Michigan LLC Act) exists for Defendant[s] to enforce against Plaintiffs," the dismissal of defendants' counterclaims was warranted.

Defendants subsequently moved for judgment notwithstanding the verdict and/or new trial arguing that the court erred in finding that plaintiffs qualified as members of UVH. Defendants contended that under the Michigan Limited Liability Company Act (MLLCA), MCL 450.4101 *et seq*., only licensed individuals may organize and become members of a PLLC, and that neither plaintiff qualified as a "licensed person" because neither was legally authorized to provide the professional service rendered by UVH, namely veterinary care. Defendants further argued that even assuming, arguendo, that plaintiffs were entitled to relief, the court erred in awarding remedies and damages because while the court determined that partition and buyout of UVH was an appropriate remedy, the proper remedy for unjust enrichment claims was restitution, and plaintiffs were already fully compensated for their investment in UVH.

On October 13, 2023, the trial court issued an opinion and order denying defendants' motion for judgment notwithstanding the verdict and/or new trial opining, "The Defendant[s]' Brief in Support of his Motion did not provide any new arguments. Rather, it simply reiterates argument that was previously ruled on and which the court finds, lacking in credible evidentiary

support." The court further detailed that it awarded the testimonies of plaintiffs' expert witness and the court-appointed receiver significant weight regarding the proper calculation of damages as their testimonies were credible and supported by the record, as opposed to Avtar's testimony, which was "evasive, inconsistent with evidence and/or not supported by the evidence." The court concluded that it was "not persuaded that the overwhelming trial evidence" favored defendants, and it ultimately denied defendants' request for relief. This appeal ensued.

## III. STANDARDS OF REVIEW

This Court reviews de novo a trial court's decision whether to grant a motion for summary disposition. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159-160; 934 NW2d 665 (2019). Summary disposition pursuant to MCR 2.116(C)(10) is proper when, "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." MCR 2.116(C)(10). A motion pursuant to MCR 2.116(C)(10) assesses the factual sufficiency of a claim. *El-Khalil*, 504 Mich at 159-160. "When considering such a motion, a trial court must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion." *Id*. at 160. "A motion under MCR 2.116(C)(10) may only be granted when there is no genuine issue of material fact." *El-Khalil*, 504 Mich at 160. "A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ." *Id*., quoting *Johnson v VanderKooi*, 502 Mich 751, 761; 918 NW2d 785 (2018) (quotation marks and citation omitted).

"A trial court's factual findings in a bench trial are reviewed for clear error." *Prentis Family Foundation v Barbara Ann Karmanos Cancer Institute*, 266 Mich App 39, 59, 698 NW2d 900 (2005). "This Court reviews the trial court's determination of damages following a bench trial for clear error." *Alan Custom Homes, Inc v Krol*, 256 Mich App 505, 513; 667 NW2d 379 (2003). "A finding is clearly erroneous where, after reviewing the entire record, this Court is left with a definite and firm conviction that a mistake has been made. This Court is especially deferential to the trial court's superior ability to judge of the relative credibility of witnesses[.]" *Smith v Straughn*, 331 Mich App 209, 215; 952 NW2d 521 (2020) (alteration in original; quotation marks and citations omitted). "We review a trial court's conclusions of law in a bench trial de novo." *Astemborski v Manetta*, 341 Mich App 190, 196; 988 NW2d 857 (2022).

"We review de novo the trial court's ruling on a motion for [judgment notwithstanding the verdict (JNOV)]." *Morales v State Farm Mut Auto Ins Co*, 279 Mich App 720, 733; 761 NW2d 454 (2008). "The trial court should grant a JNOV motion only when the evidence and all legitimate inferences viewed in a light most favorable to the nonmoving party fail to establish a claim as a matter of law." *Id*. This Court reviews a trial court's denial of a motion for new trial for an abuse of discretion. *Kelly v Builders Square, Inc*, 465 Mich 29, 34; 632 NW2d 912 (2001). "An abuse of discretion occurs when the trial court chooses an outcome falling outside the range of principled outcomes." *Elher v Misra*, 499 Mich 11, 21; 878 NW2d 790 (2016). In a motion for a new trial, neither this Court nor the trial court may substitute its judgment for that of the fact-finder unless the record indicates the evidence "preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand." *Barnes v 21st Century Premier Ins Co*, 334 Mich App 531, 551; 965 NW2d 121 (2020) (quotation marks and citation omitted).

## IV. SUMMARY DISPOSITION

Defendants argue that the trial court erroneously determined that plaintiffs are entitled to summary disposition on plaintiffs' member oppression and unjust enrichment claims. We agree regarding unjust enrichment, but disagree concerning member oppression.

## A. MEMBER OPPRESSION

Defendants first contend that the trial court erred in finding that plaintiffs qualified as members of UVH under the MLLCA. We disagree.

UVH is organized as a PLLC pursuant to the MLLCA. Because UVH was established to provide services in a learned profession, namely veterinary medicine, the entity was required to comply with Article 9 of the MLLCA, which governs PLLCs. See MCL 450.4201. Article 9 states, in pertinent part, that if a PLLC provides a professional service regulated under the Public Health Code—as UVH does—then all members and managers of the company must be licensed or otherwise legally authorized in Michigan to provide that same professional service. MCL 450.4904(2). It is undisputed that neither plaintiffs nor Ravinder possessed the required license or authorization to technically qualify as members of UVH.

However, MCL 450.4202(2) provides, in relevant part, "Filing is conclusive evidence that all conditions precedent required to be performed under this act are fulfilled and that the company is formed under this act, except in an action or special proceeding by the attorney general." Accordingly, the filing of the necessary incorporation documents served as conclusive evidence that UVH satisfied the conditions precedent for forming a PLLC, including the requirement that all members and managers be licensed individuals. Moreover, our appellate courts have previously held that only the state has standing to challenge such presumptions. See *Miller v Allstate Ins Co*, 481 Mich 601, 615; 751 NW2d 463 (2008) (providing, "Michigan courts have long held that the state possesses the sole authority to question whether a corporation has been properly incorporated under the relevant law"); see also *Grady v Wambach*, 339 Mich App 325, 333; 984 NW2d 463 (2021) (concluding the defendant did not have standing to assert an affirmative defense that challenged the plaintiff PLLC's formation under the MLLCA, despite the entity's failure to comply with the requirement that all members and managers be licensed persons); *Sterling Hts Pain Mgt, PLC v Farm Bureau Gen Ins Co of Mich*, 335 Mich App 245, 252; 966 NW2d 456 (2020) (opining, "The filing of the required documents of incorporation was conclusive evidence that plaintiff met the conditions precedent for formation of a PLC, including the requirement that all members and managers be licensed persons. Only the Attorney General has standing to contest that presumption"). Thus, despite defendants' assertions to the contrary, the alleged incorporation defect does not bar plaintiffs from advancing a member oppression or unjust enrichment claim against defendants.

Defendants further argue that there was a genuine factual dispute regarding whether plaintiff maintained a viable member oppression claim against defendants under MCL 450.4515. We disagree.

MCL 450.4515, which is part of the MLLCA, provides in pertinent part:

(1) A member of a limited liability company may bring an action in the circuit court of the county in which the limited liability company's principal place of business or registered office is located to establish that acts of the managers or members in control of the limited liability company are illegal or fraudulent or constitute willfully unfair and oppressive conduct toward the limited liability company or the member . . . .

* * *

(2) As used in this section, "willfully unfair and oppressive conduct" means a continuing course of conduct or a significant action or series of actions that substantially interferes with the interests of the member as a member. Willfully unfair and oppressive conduct may include the termination of employment or limitations on employment benefits to the extent that the actions interfere with distributions or other member interests disproportionately as to the affected member. The term does not include conduct or actions that are permitted by the articles of organization, an operating agreement, another agreement to which the member is a party, or a consistently applied written company policy or procedure.

While defendants contend that Avtar did not engage in conduct that qualifies as "willfully unfair and oppressive" under the statute, the record clearly demonstrates otherwise. Avtar was responsible for (1) removing plaintiffs from UVH's bank accounts, (2) unilaterally changing the entity's registered address with the state to prevent further communications between plaintiffs and LARA, (3) revoking plaintiffs' access to UVH's accounting records; (4) filing tax documents that falsely identified Avtar as the sole member and owner of the entity, (5) transferring $178,000 from the business accounts to separate accounts accessible only by him, and (6) using UVH's funds to significantly increase his own salary, pay his personal taxes, and cover his legal fees in this matter—while simultaneously withholding member distributions from plaintiffs and excluding them entirely from the entity's operations. Moreover, Avtar testified that he did not regard the operating agreement as legally enforceable and therefore did not consider himself obligated to comply with its provisions. He further asserted that, as the purported sole professional member of the entity, he possessed the authority to unilaterally make all decisions on behalf of the company without the consent of the remaining members. The foregoing conduct clearly and substantially interfered with plaintiffs' rights and interests as members of UVH, constituting member oppression within the meaning of MCL 450.4515.

Defendants also argue that Avtar's disputed actions were necessary to safeguard the business from additional harm allegedly caused by plaintiffs, asserting that plaintiffs "systematically looted the business for years, without approval or need." However, this assertion is wholly unsupported by the evidentiary record. While a transfer of $145,000 was made from the UVH bank accounts to plaintiffs in March 2019, followed by a subsequent transfer of $31,836, such funds were disbursed to reimburse plaintiffs for their prior capital contributions to the entity. Furthermore, the subsequent transfer of title to the building and van from UVH to plaintiffs occurred after Avtar undertook the aforementioned activities, and was effectuated to protect the assets because of plaintiffs' concerns regarding the entity's PLLC status, in addition to Avtar's refusal to assume responsibility for the applicable insurance expenses. Ultimately, the trial court

correctly concluded that plaintiffs were entitled to summary disposition on their claim of member oppression.

## B. UNJUST ENRICHMENT

Defendants argue that summary disposition was improperly granted in favor of plaintiffs with respect to their claim for unjust enrichment. We agree.

"Whether a claim for unjust enrichment can be maintained is a question of law that we review de novo." *Karaus v Bank of New York Mellon*, 300 Mich App 9, 22; 831 NW2d 897 (2012). Unjust enrichment is the equitable counterpart of a legal claim for breach of contract. *AFT Mich v Michigan*, 303 Mich App 651, 677; 846 NW2d 583 (2014), aff'd 497 Mich 197 (2015). "An equitable claim of unjust enrichment is grounded on the theory that the law will imply a contract to prevent the unjust enrichment of another party." *Landstar Express America, Inc v Nexteer Auto Corp*, 319 Mich App 192, 204; 900 NW2d 650 (2017). However, if there is an express contract between the parties covering the subject matter, the doctrine of unjust enrichment is inapplicable. *Id.* A party claiming unjust enrichment must demonstrate "(1) the receipt of a benefit by the defendant from the plaintiff and (2) an inequity resulting to the plaintiff because of the retention of the benefit by the defendant." *Id.* at 205 (quotation marks and citation omitted).

In the instant matter, the existence of an operating agreement governing the formation and operation of the subject entity rendered plaintiffs' unjust enrichment claim devoid of any arguable legal merit. See *King v Ford Motor Credit Co*, 257 Mich App 303, 327; 668 NW2d 357 (2003) (stating that "a contract will not be implied under the doctrine of unjust enrichment where a written agreement governs the parties' transaction"). The operating agreement explicitly addressed matters pertaining to membership, the allocation and distribution of profits and losses, access to the PLLC's books and records, and the management of capital accounts. Accordingly, the trial court incorrectly concluded that plaintiffs were entitled to summary disposition on their claim of unjust enrichment.

While the trial court improperly granted summary disposition to plaintiffs on their unjust enrichment claim, reversal is unwarranted on this basis because the error was harmless. See MCR 2.613(A) (stating that "an error in a ruling or order, or an error or defect in anything done or omitted by the court . . . vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take this action appears to the court inconsistent with substantial justice"); see also *Gleason v Dep't of Transp*, 256 Mich App 1, 3; 662 NW2d 822 (2003) (providing, "A trial court's ruling may be upheld on appeal where the right result issued, albeit for the wrong reason"). The trial court properly resolved that summary disposition was appropriate with respect to the member oppression claim, and the remedy and corresponding damages awarded remain proper under the statutory framework governing relief for member oppression, as further detailed below. Accordingly, defendants are not entitled to relief on this issue.

## V. REMEDIES

Defendants argue that even assuming, arguendo, that plaintiffs were entitled to relief, the trial court erred in its determination of the appropriate remedy and the corresponding damages. We disagree.

The proper remedy for claims of member oppression is set forth in MCL 450.4515(1), which provides:

(1) A member of a limited liability company may bring an action in the circuit court of the county in which the limited liability company's principal place of business or registered office is located to establish that acts of the managers or members in control of the limited liability company are illegal or fraudulent or constitute willfully unfair and oppressive conduct toward the limited liability company or the member. If the member establishes grounds for relief, the circuit court may issue an order or grant relief as it considers appropriate, including, but not limited to, an order providing for any of the following:

(a) The dissolution and liquidation of the assets and business of the limited liability company.

(b) The cancellation or alteration of a provision in the articles of organization or in an operating agreement.

(c) The direction, alteration, or prohibition of an act of the limited liability company or its members or managers.

(d) The purchase at fair value of the member's interest in the limited liability company, either by the company or by any members responsible for the wrongful acts.

(e) An award of damages to the limited liability company or to the member. An action seeking an award of damages must be commenced within 3 years after the cause of action under this section has accrued or within 2 years after the member discovers or reasonably should have discovered the cause of action under this section, whichever occurs first.

In its findings of fact, conclusions of law, and judgment, the trial court resolved, "Having established that [Avtar] engaged in willfully unfair and oppressive conduct against and/or unjustly enriched himself at the expense of Plaintiffs," the following relief was appropriate: (1) ordering Avtar to purchase plaintiffs' interest in UVH at the entity's fair market value as of December 31, 2019, which was $402,000, (2) awarding plaintiffs damages amounting to $34,834, which included plaintiffs' out-of-pocket expenses for the operations of the UVH building, "lost interest that could have been earned on the net estimated economic losses had Plaintiffs been bought-out of the business on 12/31/2019," and a credit for 50% of the reported cost of the van, which was presently owned by plaintiffs, and (3) "pre-judgment interest on the amount of their damages in the amount (calculated from the date of Plaintiffs filing their Complaint on June 1, 2020, through June 15, 2023), of $32,846.55." The court further stated that because plaintiffs may maintain ownership of the UVH building, "the Gross Judgment is reduced by 50% of the Building's value ($100,000), to a net judgment amount of $369,681 in favor of Plaintiffs against Defendant[s]."

The judgment in question clearly fell within the scope of MCL 450.4515(1). Pursuant to MCL 450.4515(1)(d), the trial court ordered the purchase of plaintiffs' membership at fair value, as determined and affirmed by both plaintiffs' expert witness and the court-appointed receiver.

-9-

Although defendants argue that the trial court failed to consider the UVH assets remaining in plaintiffs' possession, the court expressly reduced the gross judgment to reflect the value of the building and the van retained by plaintiffs. Moreover, the court awarded monetary damages pursuant to MCL 450.4515(1)(e), compensating plaintiffs for out-of-pocket expenditures and accrued interest on their economic losses caused by Avtar's oppressive conduct. Additionally, the trial court afforded significant weight to the testimonies of plaintiffs' expert witness, the court-appointed receiver, and plaintiffs themselves in determining the appropriate remedy and damages. See *Avery v Michigan*, 345 Mich App 705, 716; 9 NW3d 115 (2023) (stating, "An appellate court will give deference to the trial court's superior ability to judge the credibility of the witnesses who appeared before it") (quotation marks and citation omitted).

Defendants correctly assert that restitution is the appropriate remedy for a claim of unjust enrichment. See *Wright v Genesee Co*, 504 Mich 410, 419; 934 NW2d 805 (2019) (stating, "Unjust enrichment, by contrast, doesn't seek to compensate for an injury but to correct against one party's retention of a benefit at another's expense. And the correction, or remedy, is therefore not compensatory damages, but restitution"). However, the court granted the contested relief on the basis of both plaintiffs' unjust enrichment and member oppression claims, and, as previously detailed, the remedy and damages awarded are authorized under the statutory framework governing member oppression claims. Therefore, the trial court correctly determined the appropriate remedy and corresponding damages with respect to plaintiffs' claims.

## VI. COUNTERCLAIM

Defendants argue that the trial court erroneously dismissed defendants' counterclaims against plaintiffs. We disagree.

As a preliminary matter, defendants did not explicitly plead conversion in their counterclaim, rather, defendants generally alleged that plaintiffs "wrongfully withdrew money, transferred property both real and personal and otherwise wrongfully took money and property from [UVH] without any basis in law or agreement." See MCR 2.111(B)(1) (providing, "A statement of the facts, without repetition, on which the pleader relies in stating the cause of action, with the specific allegations necessary reasonably to inform the adverse party of the nature of the claims the adverse party is called on to defend"). Defendants first expressly asserted a conversion claim in their response to plaintiffs' motion for summary disposition as to defendants' counterclaim. However, the basis of defendants' conversion claim, plaintiffs' transfer of title to the building and van to themselves, was cited in defendants' counterclaim and various other filings, and the matter was directly addressed and refused by plaintiffs during the lower court proceedings, thereby affording plaintiffs sufficient notice of the nature of the allegation.

Regardless, defendants failed to establish a meritorious counterclaim for conversion. "[C]onversion is defined as any distinct act of domain wrongfully exerted over another's personal property in denial of or inconsistent with the rights therein." *Dunn v Bennett*, 303 Mich App 767, 777; 846 NW2d 75 (2013) (alteration in original; quotation marks and citations omitted). In the instant matter, the trial court properly opined, "Plaintiffs did not wrongfully withdraw money or transfer real or personal property from UVH, and that any such withdrawals and/or transfers Plaintiffs performed were authorized by UVH's members and/or substantially necessary to preserve UVH's assets, and that, in any event, neither [Avtar] nor UVH were damaged."

Parminder testified that, following the breakdown in communication with Avtar, plaintiffs consulted legal counsel and learned that membership in a PLLC is limited to licensed individuals, a requirement they did not satisfy; Parminder explained, "And at that point the concern was that if we don't exist as an entity, I was very concerned about the biggest assets this company had was the building," and plaintiffs executed the contested quitclaim deed on that basis. Furthermore, following the transfer of the property title to plaintiffs, plaintiffs paid the insurance and taxes for the building, with UVH listed as the additional insured on the policy. Plaintiffs also transferred the title of a van to themselves because Avtar refused to pay the vehicle's insurance. Ultimately, defendants fail to demonstrate how the challenged transfer of titles constituted conversion.

Defendants' unjust enrichment allegation is similarly subject to questions regarding whether defendants adequately pleaded such a cause of action in their counterclaim. Nonetheless, because the law cannot imply a contract if there is an express contract between the parties covering the same issue, and the operating agreement set forth provisions governing the treatment and disposition of company property, defendants neglected to state an actionable claim for unjust enrichment. Thus, the trial court properly dismissed defendants' counterclaims.

Affirmed.

/s/ James Robert Redford
/s/ Michael J. Riordan
/s/ Mariam S. Bazzi